# Mason's Appeal.

1. The personal property of a decedent is the primary fund for the payment of all his debts, and a judgment which was a lien on his real estate in his lifetime, is entitled to share *pro rata* with the unsecured debts in its distribution.

2. The estate of a decedent consisted of two funds, one arising from the personalty, and the other from the sale of the real estate. There were both lien and unsecured creditors. *Held,* that both classes were entitled to share *pro rata* in the distribution of the personalty fund, and after its distribution, the real estate fund should be awarded to the lien creditors in the order of their priority.

3. In such distribution there is no distinction between solvent and insolvent estates ; the order of paying is the same in either case.

4. Ramsay's Appeal, 4 Watts 71, reviewed.

March 13th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Luzerne county :* Of January Term 1879, No. 68.

Appeal of William Mason from the decree of the court distributing the balance in the hands of the administrators of Davis Dean, deceased.

Davis Dean died in 1876, intestate and insolvent. On September 18th 1877, an order was made for the sale of the decedent's real estate for the payment of debts, and on January 9th 1878 the court confirmed the sale. The administrators filed their account April 1st 1878. The personal property fund for distribution was $3451.11, and after paying costs of audit and preferred claims there was left a balance of $2237.86. The real estate fund for distribution at the time of the audit consisted of $1141.70 in cash, and $2985.22 secured by mortgages not due until January 9th 1879, seven months thereafter. The unsecured claims proved amounted to $10,250.13, and the liens on the real estate to $4281.75. Among the latter Mary Dean had a judgment for $573.50, and William Mason a judgment for $171. These judgments were the two last liens. Before the auditing judge it was .

contended on behalf of these two lien-creditors that the fund aris-
ing from the personal property should be first distributed *pro rata*
among all the creditors, lien and unsecured alike; that this pro-
cess of distribution would pay over fifteen cents on the dollar to
both secured and unsecured claims; that by this arrangement the
lien debts would be reduced about $600, and as the real estate fund
lacked only $153.84 to pay the liens thereon in full, that payment
in full would thus be secured. The auditing judge was however
of a different opinion, and distributed the real estate fund first
to the lien-creditors, in the order of their priority, paying a part
of Mary Dean's judgment, but not reaching Mason's. The per-
sonalty fund was afterwards distributed *pro rata*, in which distribu-
tion the *unpaid balance* of the Dean judgment and the Mason
judgment participated. Exceptions were filed to this adjudication,
Mary Dean alleging that the court erred in not allowing her a *pro
rata* share on her *whole claim* out of the personal fund which upon
a restatement of the account was allowed. The exceptions of
Mason were to the effect that all the judgment-creditors should
have first shared *pro rata* in the personal estate fund, and then
taken the balance of their claims out of the real estate fund, the
result of which would have been to give the junior judgment-cred-
itors a larger share of the above estate, and the general creditors a
smaller one than has been awarded them, while the senior judg-
ment-creditors would remain unaffected.

The court, Rhône, P. J., dismissed the exceptions, in an opinion,
inter alia, saying:

" The apparent dilemma lies in the fact that we have the two
funds for distribution at once. We think the proper solution of
this case depends upon this further proposition that where an estate
is insolvent judgment-creditors may, but are not obliged, first to
claim a dividend out of the personal estate, and then resort to the
real estate for any deficiency; and that in the absence of any ex-
press demand on either fund, it is presumed that they elect to claim
payment out of that fund which they have in their immediate grasp,
and which will the most directly satisfy them : 10 Harris 442;
Scott 205–6. It is elementary law that no one will be forced upon
a fund simply to accommodate another claimant, unless such fund
is sufficient to satisfy his whole demand. No one will be compelled
to split up his claim and roll it around until he finds satisfaction,
when he has under his immediate control a single fund, if the pur-
pose is simply to accommodate a stranger to him. We cannot, for
such a purpose, without his consent, substitute the real estate
security of a judgment-creditor of a decedent for the personal bond
of an administrator and his sureties, given for personal estate only,
and thus oblige him, in case of the default of the administrator, to
pursue two sets of sureties—one for that part which is to be paid
out of personal estate and another for the balance awarded out of

[Mason's Appeal.]

real estate. In this case the exceptant has no superior equity, for his present demand cannot be complied with without injuring the general creditors, and at least endangering the rights of the senior judgment-creditors."

The distribution made in accordance with this opinion awarded the real estate fund to the lien-creditors in the order of their priority, which gave to Mason a small amount on his judgment and allowed the balance to them *pro rata* with the unsecured creditors, in the personal property fund. From the decree thus made Mason took this appeal.

*A. D. Dean*, tor appellant.—There was no equity which required the judgment-creditors to first exhaust the real estate fund : Torr's Estate, 2 Rawle 254 ; Kittera's Estate, 5 Harris 422. The personal fund is the primary one for the payment of all debts ; 4 Kent's Com. 420 ; Hoover *v.* Hoover, 5 Barr 356 ; Ramsey's Appeal, 4 Watts 71 ; Walker's Estate, 3 Rawle 237 ; Mason's Estate, 1 Pars. 129 ; Scott on Intestate Law 187. See also Shunk and Freedley's Appeal, 2 Barr 304 ; and Morris *v.* Olwine, 10 Harris 442.

No counsel nor paper-book *contra.*

Mr. Justice PAXSON delivered the opinion of the court, March 24th 1879.

In this case there were two funds for distribution ; one the proceeds of the personal estate ; the other the proceeds of the sale of the real estate. The court below distributed the real estate fund first, and applied it to the payment of the judgments which were liens during the lifetime of the decedent, and then applied the personal fund *pro rata* to all the claims, including the judgments of Mary Dean and the appellant. The result was that all the judgments were paid in full, except the judgment of the appellant, which was thrown entirely upon the personal fund, and of course received only its *pro rata* dividend. From this decree of distribution an appeal was taken to this court, upon the ground that the court below should first have applied the personal fund to the payment of all the debts *pro rata.* The effect of this would have been that the lien-creditors would have received a dividend out of the personal estate, which would have so reduced the amount of the encumbrances as to let in the judgment of the appellant upon the real estate fund, and paid him in full. There would of course have been a corresponding reduction in the dividend to the unsecured creditors, who were confined to the personal fund.

By the law of this state, all of a man's debts become a lien upon his real estate when he dies. For the purposes of distribution, however, judgments recovered during the lifetime of a decedent are

entitled to priority over general creditors out of the proceeds of the real estate.

The personal estate is the primary fund for the payment of debts, including such as were liens upon the real estate. I know of no rule of law better settled than this. It hardly needs the citation of authorities, and I refer to only a few, that are conveniently at hand: 4 Kent's Com. 420; Walker's Estate, 3 Rawle 229; Ramsey's Appeal, 4 Watts 71; Hoover v. Hoover, 5 Barr 356.

If, therefore, the administrator had filed a partial account, containing only the proceeds of the personal estate, it is clear that such proceeds must have been applied *pro rata* to all the creditors, including the judgment-creditors, who are secured upon the real estate. This would have produced the precise result claimed by the appellant. So much was admitted by the learned judge of the Orphans' Court, but inasmuch as there were two funds for distribution at the same time, and the estate was insolvent, he held that the judgment-creditors may, but are not obliged to, claim a dividend out of the personal estate, and then resort to the real estate fund for any deficiency; and further, that in this case the appellant has no superior equity which entitles him to throw the judgment-creditors upon the personal fund, in the first instance, to the manifest injury of the general creditors. I concede there is no equity in the appellant's claim. But this is not a question of equities, or of the marshalling of assets. Nor is it a question of election by creditors between funds. On the contrary, it is a matter of the payment of debts in the order prescribed by the Act of Assembly. As before said, the personal estate is the primary fund for the payment of debts. Until that is exhausted, or shown to be insufficient, the law will not permit the administrator to sell the real estate, and then only so much thereof as may be necessary to make up the deficiency of the personal estate. The Act of 24th February 1834, Pamph. L. 77, Purd. 421, provides that "all debts owing by any person within this state, at the time of his decease, shall be paid by his executors or administrators, so far as they have assets, in the manner following, viz.: 1. Funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, and servants' wages not exceeding one year; 2. Rents not exceeding one year; 3. All other debts, without regard to the quality of the same, except debts due the Commonwealth, which shall be last paid." There is no distinction here between solvent and insolvent estates; the order of paying debts is the same in either case. Nor is there any question of equities or of marshalling of assets; it is an order of the payment of debts which must be observed in all cases. The executor or administrator has no discretion; he shall pay—is the imperative command of the statute—in the order therein prescribed. Hence, when personal estate comes to his hands, he must apply it first to the preferred debts specified in the act, and then to "all other debts without regard to

the quality of the same;" and for this he is responsible upon his official bond. Nor can this order of the payment of debts be changed by any arrangement between a class of creditors and the administrator. In the case in hand, had the personal estate been sufficient for the payment of all the debts, including general and lien-creditors, it is too plain for argument it would have been the duty of the administrator to have so applied it, and thus to have relieved the real estate for the benefit of the heirs. The same principle must be applied though the estate be insolvent.

No authority can be found in this state to sustain the position of the appellees: Ramsey's Appeal, 4 Watts 71, is the only case in point that I have found, or that has been called to our attention, and that is with the appellant. It is not well reported, but enough is clear to show that there were two funds, as here : the one real and the other personal ; and one of the main questions was whether the personal fund should be first applied *pro rata* among all the creditors. This appears from the following exception : " There was error in not decreeing the personal fund to be first applied to the payment of the debts of the deceased, according to the Statute of Distribution, and then applying the fund raised by the sale of the real estate, to the payment of the liens upon it." It was said by Mr. Justice ROGERS in delivering the opinion of the court : " The personal fund, including of course the money arising from the sale of the land not bound by judgments obtained in the lifetime of the deceased, must be distributed in the first place, among the creditors in the order prescribed by the act. It is made the duty of an executor or an administrator to pay all the debts of the intestate in the manner therein prescribed. * * * The personal property of a decedent is the primary fund for the payment of all debts ; and this is as true of a judgment, which is a lien on the real estate in the lifetime of the decedent, as of any other debt. It is only in case there is an insufficiency of personal estate that an Orphans' Court will order a sale of real estate to pay debts.

Ramsey's Appeal was decided nearly half a century ago. Its principle was recognised and followed in the somewhat analogous case of Shunk & Freedley's Appeal, 2 Barr 304, where there was a fund for distribution in the hands of an assignee for creditors. Shunk & Freedley's Appeal was cited and approved in Morris *v.* Olwine, 10 Harris 442. I know of no case in conflict with Ramsey's Appeal ; certainly no such case was cited upon the argument. That it has not been questioned is persuasive evidence of the general approval of the profession of the principles it established.

The decree is reversed at the costs of the appellees, and it is ordered that the record be remitted to the Orphans' Court, with directions to make distribution in accordance with the principles indicated in this opinion.

Mr. Justice MERCUR dissented.