## Huff's Estate.

Argued January 6, 1930.   Before Moschzisker, C. J.,
Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*Joseph Levy*, with him *Boose & Boose*, for appellant, in No. 95.—The proceeds of the insurance policy did not belong to general creditors: Haberfield v. Mayer, 256 Pa. 151; Lake Shore Banking Co. v. Fuller, 110 Pa. 156.

*John W. Maher*, with him *Leland W. Walker*, for appellee in No. 95.—The attempted change of beneficiary under the insurance policy is void and the proceeds of the life insurance policy is an asset of the estate for the payment of general creditors: Bank of Washington v. Hume, 128 U. S. 195.

*Joseph Levy*, with him *Boose & Boose*, for appellants, in No. 96.

*Joseph Levy*, with him *Boose & Boose*, for appellants, in No. 97.—The orphans' court had no jurisdiction to remove the administrator.

The orphans' court had no power to appoint an administrator d. b. n.

The orphans' court had no power to order the administrator and his counsel to turn over the assets of the estate to the register of wills: Bradley's Est., 9 Phila. 327.

*John W. Maher*, with him *Leland W. Walker*, for appellee, in No. 97.—Appellants have no right of appeal in this case and the appeal undertaken by them should be quashed: Holden v. Llewellyn, 262 Pa. 400; Beatty v. Harris, 205 Pa. 377; Bradley v. Com., 31 Pa. 522.

OPINION BY MR. JUSTICE WALLING, January 27, 1930:

The three appeals in this case are in the same estate, and, while they raise different questions, will be considered in one opinion and referred to as the first, second and third appeal. In August, 1924, Irvin T. Huff, a coal operator of Somerset County, doing business as "The United Smokeless Coal Company," took out a $15,000 policy on his life in the Connecticut General Life Insurance Company, and named the coal company as beneficiary. Huff was the coal company and, in effect, the beneficiary under the policy. His coal operations were conducted on a six thousand acre tract of coal in Somerset County. This coal, including thirty-five hundred acres of surface, and a collection of some one hundred houses, was owned by the Metropolitan Life Insurance Company. This company, on April 1, 1925, transferred the entire property to Huff, who gave it a purchase-money mortgage thereon of $195,000. Thereafter, Huff had the policy of life insurance above stated changed so as to make the appellant, Harry L. Campbell, the beneficiary in trust for a local bank to whom Huff was a debtor. Then, on September 16, 1925, he had a further change made, including another local bank, to whom Huff was also indebted, as a beneficiary under the trust. Huff died September 21, 1925, insolvent, and was so when he had the insurance transferred from himself as beneficiary to Campbell as trustee. His creditors embraced others aside from the banks in question and included Edgar B. Chiswell, of Washington, D. C., from whom Huff had borrowed some thirty-eight hundred dollars in 1924.

Huff's will named his wife as sole executrix but on her declining to qualify, her brother, Harry L. Campbell, was appointed administrator c. t. a. of the estate. Campbell received the insurance money, paid the designated banks in full and credited the balance, some $2,000, to Huff's estate. To his account claiming credit for the payments to the banks, the creditor Chiswell filed excep-

tions on the contention that Huff, being insolvent and the insurance being an asset of his estate, could not be given to a trustee for the benefit of certain named creditors to the exclusion of others. In other words, that the trust for certain creditors created an unlawful preference, was fraudulent in law as to other creditors and operated as an assignment of the fund for the equal benefit of all creditors. This contention was sustained by the orphans' court, which held, in effect, that notwithstanding the change of beneficiary, the fund was an asset of the estate for the equal benefit of all creditors and that its payment by Campbell to the favored banks was a misappropriation and by proper decree surcharged him the amount of those payments, he to be subrogated to the rights of the banks so paid. Thereupon, the administrator brought the first appeal.

We are not convinced that error was thereby committed. The only error assigned is to the final decree. We must therefore assume the facts are as found by the orphans' court. The same rule applies as in equity and the only question is, Do the findings support the decree? Atlas Portland Cement Company v. Am. B. & C. Co., 280 Pa. 449, 452; Schwartz v. Wesoky, 281 Pa. 388; Fidelity T. & T. Co. v. Hays, 281 Pa. 461. The facts as above stated substantially accord with such findings. The only way to challenge the findings is first, by exception thereto in the lower court and then, if overruled, by assignments of error thereto on appeal. Unless that is done it is vain to urge here that the facts are not as found. For example, that the United Smokeless Coal Company was a corporation, or that Huff was not insolvent, in the face of the orphans' court's express findings to the contrary. When the coal company, which was Huff, in fact, was made beneficiary of the life insurance, it became an asset of his estate and could not thereafter when he was insolvent be given in trust to secure an existing indebtedness to certain banks. The attempt rendered it an assignment for the benefit of all

creditors. Had the banks been originally named as the beneficiaries, the rule might be different. True, an insolvent may pay certain of his creditors to the exclusion of others. But placing property in trust for some will operate as an assignment for the benefit of all. This is a contest between creditors and not the case of a husband carrying life insurance for the protection of his wife or other dependent members of his family, which is regulated by statute. See Irving Bank v. Alexander, 280 Pa. 466. An insolvent cannot even change the beneficiary of his life insurance from his executors to his wife. See McKow's Estate (No. 1), 198 Pa. 96; Appeal of Elliott's Executors, 50 Pa. 75, 86. The Act of April 17, 1843, P. L. 273, 2 Purdon's Digest (13 ed.) 1896, provided that assignments of property in trust to prefer one or more creditors inured to the benefit of all creditors. More recent legislation (see Act of June 4, 1901, P. L. 404, especially section 3, page 406, 2 Purdon's Digest (13 ed.) 1921) contains similar provisions. It is uniformly held that the creation of a trust for the protection of certain favored creditors inures to the benefit of all: Mann, Moon & Co. v. Wakefield, 179 Pa. 398; Miners' National Bank's Appeal, 57 Pa. 193. An assignment which creates an unlawful preference cannot be sustained: Love, Receiver, v. Clayton, 287 Pa. 205. It is not the payment of the debt, but the creation of the trust which the law condemns: Miller v. Shriver, 197 Pa. 191, 195. In the instant case the trust created for the banks was to secure an existing indebtedness and they were not purchasers for value. See McCutcheon's Appeal, 99 Pa. 133, 138.

After Huff's death, appellant took charge of the real estate, including collection of the rents, and in each of his two accounts, filed as administrator, charges himself therewith. It was averred in an exception that he had not charged himself with all the rents collected. This the orphans' court sustained to the amount of $298.37. While the accounts are somewhat complicated and badly

stated, in our opinion this surcharge cannot be sustained. In fact, the appellee practically concedes that this surcharge should be but $208.74. This latter calculation, however, omits a net credit claimed of $241.95 on a list of expenses filed, to which no objection appears. While we sustain the complaint as to this surcharge, we cannot relieve appellant from the costs of this appeal because of the defective manner in which his accounts were stated.

On August 17, 1926, the appellant, Harry L. Campbell, as administrator of the Huff estate, presented a petition to the orphans' court, averring, inter alia and in effect, that the real estate of said deceased embraced in the Metropolitan Life Insurance Company mortgage was not worth the amount of the encumbrance and no one would purchase it subject thereto and substantially that it was a liability of the estate and praying for leave to abandon the same, which leave was granted as prayed for. Thereupon the administrator's attorney appeared for the Metropolitan Life Insurance Company and proceeded to foreclose the mortgage, the administrator, being named as a defendant, agreed to such steps so as to expedite the sale of the property. The same attorney, through a prior arrangement with the mortgagee, submitted a bid of $15,000 on which the property was sold to him at the sheriff's sale. Of this sum, $10,000 went to pay attorney's commissions, costs and other expenses, and $5,000 was paid to the mortgagee. The title to the coal property while taken in the name of the attorney was promptly conveyed to four parties, including himself and Campbell, and, except for some sales, the title still so remains.

In April, 1928, the creditor, Chiswell, presented his petition to the orphans' court, averring substantially that the administrator's petition for leave to abandon the coal property had not been made in good faith but fraudulently and for the purpose of enabling the administrator and his attorney to become purchasers of

the coal property at a nominal price to the loss of the Huff estate and its creditors. The administrator filed a so-called answer containing merely the averment that Chiswell's claim had lost its lien upon the real estate and, hence, he had no standing to present the petition. The answer contained no denial of the important averments of the petition. The orphans' court treated the answer as a speaking demurrer and made absolute the rule to strike off the order granting the administrator leave to abandon the mortgaged premises. Thereupon the administrator brought the second appeal. In view of what followed, the orphans' court treated the decree permitting the administrator to abandon the mortgaged real estate as having been inadvertently made. If so, that court could correct the inadvertent decree by striking it off. This it might have done on its own motion and that it was done on the petition of a general creditor was not a fatal defect. Whether such creditor could have compelled the court to act or would have had standing to appeal from its refusal to do so, is another question. As a general rule it is within the sound discretion of the orphans' court to set aside its own orders. See Bower's Appeal, 84 Pa. 311. Appellant complains because not given an opportunity to amend the answer, but no request was made for leave to amend, which, according to equity practice, might have been done at any time before taking this appeal. See Rules of Equity Practice No. 56. As to what, if any, effect the action complained of will have upon the rights of parties, we express no opinion. The decree, however, should have been made without prejudice to intervening rights.

The third and final appeal is from the order removing the administrator, which was made March 17, 1929, on petition of the creditor, Edgar B. Chiswell, setting forth manifold acts of alleged misconduct by the administrator, among others, that Huff died the owner of all the stock (four hundred shares) of the Ursina & North Fork Railway Company, of the value of $150,000, which

was held by the Metropolitan Life Insurance Company as additional security for payment of the said $195,000 indebtedness, which stock, following the sale of the mortgaged premises, the insurance company exposed to public sale and it was bought by the administrator as his own for $30.00 and divided between him and the other three ostensible owners of the mining property; also averring that the administrator had paid approximately $14,000 of the funds of the estate to certain creditors, in exclusion of others, on the false claim that they were preferred while in fact they were not; that he had misappropriated other stated sums of the estate's money; further, that he had never qualified as administrator by giving bond as the statute directs. As to the latter complaint, the record discloses that while the personal estate was inventoried at over $100,000, the only pretended bond he ever filed was one signed by himself for $1,000, to which the Somerset Trust Company was named as surety but not executed by any authorized official. The controlling facts stated in the petition being matters of record, the orphans' court, thereupon, stating as a reason the failure of the administrator to give bond as required by statute, declared void the letters issued to him and ordered him and his attorneys of record to turn over to the register of wills for safe keeping the property of the estate in their hands, from which order he and they brought this appeal.

This action of the court finds support in the Fiduciaries Act of June 7, 1917, P. L. 447. Section 8 (a), P. L. 466, requires an administrator on qualifying as such to give bond with two individual or one corporate security, while clause (d) provides: "If any register ......shall grant any letters of administration to any person or persons whatsoever, without having...... taken a bond in the manner hereinbefore prescribed, such letters shall be void, and every person acting under them shall be deemed, and may be sued and in all respects treated, as an executor of his own wrong." It follows

that a bond in the manner thereinbefore provided, that is, a bond with two individual or one corporate security, not having been given, the letters of administration were improvidently issued and void, and the court properly so declared. Section 53 of said act, P. L. 518, empowers the orphans' court to remove an administrator (clause (a) 8), "When, for any reason, the interests of the. estate or property are likely to be jeopardized by the continuance of any such fiduciary." While clause (c) of the same section provides, "Any orphans' court having jurisdiction of the accounts of any fiduciary shall have power in a case of emergency, when the exigencies of the case shall appear to the satisfaction of the court to require it, in order that the rights of creditors and parties interested in the assets of the estate shall be protected, summarily to remove such executor or administrator and vacate the letters testamentary or of administration, or summarily to remove such guardian or trustee, on any of the grounds enumerated in clause (a) of this section, and to direct the issuance of new letters or to appoint a successor to such guardian or trustee, on the ex parte petition of any creditor or party interested in the estate; and, further, to make such orders for the security of the trust property and for the delivery of such property and the books, accounts, papers, and moneys belonging or relating to the trust to the successor of such fiduciary, as the circumstances of the case may require: Provided, That it shall be lawful for any such fiduciary, so removed, to apply by petition to said court to have such decree of removal vacated and to be reinstated in his office." It has long been the law of this state that letters of administration issued without the bond required by statute are void. See Bradley et al. v. The Commonwealth, 31 Pa. 522. We are not prepared to hold that the administrator could buy Huff's railroad stock for a nominal sum and hold it as his own. Doubtless it was not worth the amount stated in the petition, but it represented a railroad about six miles

long, located in Somerset County, connecting with the Baltimore & Ohio Railroad, and having an engine, combination car and flat car, and a scrap value exceeding $12,000, and after Huff's death the stock was appraised at approximately $100,000. This appeal, however, does not directly involve the ownership of the stock.

The administrator's attorneys of record were merely his agents and when his right to the custody of the estate's property fell, theirs went with it and the court did not err in also ordering them to turn over the property to the register of wills for safe custody. In the order removing the administrator the court included a direction to the register of wills to issue letters of administration to a certain named individual as the succeeding administrator. This was inadvertently made and after this appeal was taken was revoked by the orphans' court. It is, hence, unnecessary for us to order the doing of what has already been done.

As the order of removal was properly made, it is unnecessary for us to pass, except pro forma, upon the motion to quash the appeal based on the ground that the removed administrator failed to petition the orphans' court for reinstatement as he might have done under clause (c) of section 53 of the statute above quoted.

In the first appeal the decree surcharging the administrator is modified by striking therefrom the item of $298.37 as a surcharge for rents received and as so modified the decree is affirmed at the cost of appellant. In the second appeal the rule vacating the decree permitting the administrator to abandon the mortgaged estate is modified by adding thereto the words "without prejudice to intervening rights" and as so modified is affirmed at appellant's cost. In the third appeal the decree dismissing the administrator is affirmed at the cost of appellants.