## Chiswell *v.* Campbell, Administrator, et al., Appellants.

Argued March 18, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Joseph Levy,* with him *Budd B. Boose,* for appellants. —Defendants and D. L. Miller had the legal right to purchase the railway stock for their joint benefit: Fisk v. Sarber, 6 W. & S. 18; Chorpenning's App., 32 Pa. 315; Hall's App., 40 Pa. 409; MacDougall v. Bank, 265 Pa. 170; Kelley's Est., 297 Pa. 17.

*John W. Maher,* Washington, D. C., with him *Leland W. Walker,* for appellee.—Appellant Campbell in purchasing the capital stock of the Ursina & North Fork R. R. Co. on December 27, 1926, did so as trustee for the estate of I. T. Huff: Chorpenning's App., 32 Pa. 315; Church v. Winton, 196 Pa. 107; Michoud v. Girard, 4 How. 555.

OPINION BY MR. JUSTICE WALLING, April 14, 1930:

The bill in equity in this case was filed by a creditor of the estate of the late Irvin T. Huff, of Somerset County, to secure the restoration of real and personal property, alleged to have been misappropriated by the

administrator. The case was heard upon bill, answer and testimony. The chancellor made findings of facts and drew legal conclusions and in due course a final decree was entered, refusing the relief prayed for as to the real estate, but granting it as to the personal property. Thereupon the defendants brought this appeal.

An examination of the record discloses evidence sufficient to support the facts as found, and the legal conclusions and decree properly follow such findings. Huff's Est., 299 Pa. 200, throws some light upon the questions here involved. As there stated, Huff died insolvent on September 21, 1925, and the appellant, Harry L. Campbell, became the acting administrator c. t. a. of his estate. At his death the Metropolitan Life Insurance Company, of New York, held a mortgage of $195,000 on his coal property in Somerset County, which property was sold on December 15, 1926, by the sheriff for $15,000, by proceedings on this mortgage.

Huff was the owner of 400 shares of $50 each, being the entire capital stock of the Ursina & North Fork Railway Company, the latter being a short railroad located in that county. The above stated mortgage was accompanied by a bond and the railway stock was also pledged to the mortgagee as collateral security. Twelve days after the sale on the mortgage the railway stock, having been advertised, was sold at public auction for $30, Campbell, the administrator, being the purchaser. He took title as trustee for himself, George R. Scull and Joseph Levy, local attorneys who represented the insurance company and the Huff Estate, although Scull had not actively represented the latter. Then, or later, D. L. Miller became ostensibly interested as equitable owner of a portion of the railroad stock. The impropriety of Campbell, who was acting as administrator of the estate thus buying the stock at a nominal price and so parcelling it out, is manifest. The attorneys, who were in effect joint purchasers of the stock, had control of the sale thereof for the insurance company,

who held it in pledge. As such, it was their duty to secure the highest possible price; but as purchasers it was to their interest to buy it as cheaply as possible. It was Campbell's duty as administrator to get everything possible out of the stock in relief of the estate, but as a purchaser it was to his advantage to buy it, as he did, for practically nothing. Moreover, he and the attorneys knew, what other bidders did not, that the 400 shares represented the entire capital stock of the railroad, which then had $800 cash on hand and over $3,000 of good accounts later collected, in addition to other property mentioned below.

The rule that a trustee without trust funds to protect the estate, may buy its property in his own right at a public sale, is inapplicable here as the chancellor has found on sufficient evidence that the administrator had at the time ample funds of the estate with which to bid in the stock. Campbell's position was not only that of administrator but he was in charge of the railroad as a salaried officer and Scull was a director. The railroad was in operation as a going concern, owned an engine, a combination car, a right-of-way and some five miles of track. When Campbell became administrator its stock was inventoried at $100,000, probably more than its value, but at the date of sale it had a substantial value, especially as a connecting line of railroad. In any event, it had a scrap value of many thousands of dollars. Purchase of stock representing this entire property, including the accounts and cash above mentioned, for the pittance of $30, by the administrator, for himself and the estate's attorneys, was, as found by the chancellor, a fraud upon the creditors of the estate. True, had the stock been sold for full value the consideration would have gone to the pledgee insurance company. This, however, would have reduced its judgment, which is entitled to pro rate with the claim of plaintiff and that of other general creditors. See Mason's App., 89 Pa. 402; Merkel's Est., 131 Pa. 584; Riegelman's Est., 174 Pa.

476; Jones's Est., 275 Pa. 143. Hence, the more realized from the pledge the less would be the pledgee's claim on the general fund.

The Huff Estate was the legal owner of the pledged stock until it was sold and the advantage accruing from the redemption for a nominal consideration belonged to the estate and not to the administrator and his attorneys. The rule that a trustee cannot purchase trust property from himself or at his own sale, while sound, as shown by Michoud et al. v. Good et al., 4 Howard 503; Bruner v. Finley, 187 Pa. 389; Rich v. Black & Baird et al., 173 Pa. 92; Chorpenning's App., 32 Pa. 315; Beeson v. Beeson, 9 Pa. 279, and other cases, is not controlling here, for the administrator did not buy from himself or at his own sale; but, for reasons above stated, the purchase here inured to the benefit of the estate.

Kelley's Est., 297 Pa. 17, is not in any sense parallel to the instant case. There the executor bought at judicial sale real estate of decedent situate in another state over which as executor he had no control and sold it at a profit which he turned over to the estate. The heirs claimed the profit on the assumption, not supported by proof, that the decedent's debts had lost their lien on the real estate so purchased. It was there held that as the executor might have retained the profits he could lawfully turn them over to the estate. It also appeared there that the executor had no funds of the estate with which to make the purchase.

Daniel L. Miller was not joined as a party defendant in the bill and was not made a party to the suit by appearance or otherwise. Hence, it was error to join him in the final decree and it was agreed at bar that his name should be stricken therefrom.

The name of Daniel L. Miller is stricken from the final decree and as so modified it is affirmed at the costs of the defendants.