## Phillips' Estate

*James L. Hogan,* for accountant; *L. M. Sebring,* for Goldie Hebb, exceptant.

McConnel, J., March 21, 1934.—We have for adjudication exceptions filed to an auditor's report in the Estate of Julius W. Phillips, late of South Heights Borough, deceased.

### *History of the case*

Julius W. Phillips died April 20, 1932, and letters testamentary upon his estate were issued to James L. Hogan, a member of the bar of this county. The will of Mr. Phillips was dated March 24, 1932, and gives all his real estate and personal property and his soldier's bonus to C. E. Adkins. On August 4, 1932, the executor presented a petition to this court for permission to sell the real estate of decedent for the payment of debts. The petition set forth, among other things, that there was no personal estate and only one piece of real estate, the assessed value of which was $900. Included in the schedule of debts were bills

for funeral expenses, medical services during the last illness, and a considerable amount of indebtedness which was neither secured nor preferred. Several judgments were listed as entered in the court of common pleas of this county prior to the death of the decedent—one at no. 224 December term, 1931, in favor of Goldie Hebb for $1,500, entered October 7, 1931; one at no. 225 December term, 1931, in favor of Goldie Hebb for $354.71, entered October 7, 1931; and one at no. 315 June term, 1932, in favor of Ewing Lumber Company for $560.27, entered April 19, 1932. On September 2, 1932, the executor presented a petition to the Court of Common Pleas of Beaver County praying the court to open the judgment of Goldie Hebb at no. 224 December term, 1931. After the taking of depositions by the plaintiff and defendant and argument before the court, the petition to open the judgment was dismissed at the cost of the petitioner on March 27, 1933. On August 27, 1932, the real estate of decedent was sold by the executor for payment of debts to Harris W. Ewing for $1,000. On February 6, 1933, upon petition by the executor, this sale was set aside and a resale authorized by the court. On March 4, 1933, the same real estate was sold at public sale to J. H. McCartney and Alexander O. McCartney for $825. This sale was confirmed absolutely by the orphans' court. On July 31, 1933, the executor filed his first and final account, and numerous exceptions were filed to this account by Goldie Hebb, first lien creditor. On October 16, 1933, an auditor was appointed to pass upon the exceptions filed to the executor's account, etc. On December 27, 1933, the auditor filed his report. On January 15, 1934, a petition was filed by the accountant to open confirmation of the auditor's report and permit exceptions to be filed. The same day the petition was granted, and the accountant and Goldie Hebb were each allowed to file exceptions to the auditor's report within 5 days. On January 17, 1934, exceptions were filed by the accountant to the report, and on January 20, 1934, exceptions were filed by Goldie Hebb. On January 22, 1934, the auditor filed what he calls an "Answer to Exceptions" in which he requests the court, on final disposition of the case, to award to the Daily Times $6 for publishing notice of audit, which had been omitted from the auditor's schedule of distribution. On January 26, 1934, on petition of the auditor, an order was made by the court requiring the executor to pay the costs of audit forthwith to the clerk of courts, and according to the record this payment seems to have been made by the executor.

Numerous exceptions were filed to the auditor's report by the accountant and also by counsel for Goldie Hebb. We do not intend to consider each of these exceptions separately, nor in order; but as the questions at issue were considered by the auditor in four classes we can consider them in the same way, because the exceptions are to four different kinds of claims which were made against the estate.

Class "A" were for the costs connected with the petition to open the judgment at no. 224 December term, 1931. Class "B" are for the expenses connected with the sale of real estate and for services due the executor. Class "C" is a claim for a premium on fire insurance paid by the executor upon the real estate. Class "D" are claims for expenses paid by the executor in connection with the administration of the estate and filing of the account.

### Discussion of law

The auditor seems to have been of the opinion that the executor was an intermeddler when he presented his petition for sale of the real estate of the decedent, and finds in his sixth finding of fact that no duty was imposed upon the executor in relation to the real estate of the decedent, and in his seventh finding of fact that the executor performed no duties except those he chose improperly

to perform of his own volition. We cannot agree with these findings which, of course, are based upon conclusions of law.

Section 16 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447, 479, provides as follows:

"Whenever it shall satisfactorily appear to the executor or administrator that the personal estate of the decedent, together with the rents of real estate, is insufficient to pay all just debts and the expenses of the administration, he shall proceed without delay, in the manner hereinafter provided, to sell or mortgage, under the direction of the orphans' court having jurisdiction of his accounts, so much of the real estate as shall be necessary to supply the deficiency."

This is almost an exact reënactment of section 20 of the Act of February 24, 1834, P. L. 70, 76, except that it includes in the personal estate of the decedent the rents of real estate, which were not in the Act of 1834.

Sections 15 (k) and l of the Fiduciaries Act provides as follows:

"(k) In every case of an execution against the executors or administrators of a decedent, whether founded upon a judgment obtained against such decedent in his lifetime or upon a judgment obtained against them in their representative character, if it shall be made to appear, to the satisfaction of the court issuing such execution, that there is reason to believe that the personal assets and the rents of real estate are insufficient to pay all just demands upon the estate, such court shall thereupon stay all proceedings upon such execution until the executors or administrators shall have made application to the proper orphans' court for the sale of the real estate of the decedent, or for the apportionment of the assets, or both, as the case may require.

"(l) It shall be competent for the court in the cases aforesaid, on application of the plaintiff in such judgment, or of any other person interested as heir, devisee, or otherwise, to order the executors or administrators to make application to the orphans' court for the purpose as is hereinbefore mentioned, and to enforce such order by attachment."

These sections are exact reënactments of sections 35 and 36 of the Act of 1834.

As we understand these sections of the Fiduciaries Act, it is the duty of an executor or administrator, as soon as it appears to him that the personal estate of a decedent is insufficient to pay his just debts and the expenses of the administration, to proceed without delay in the orphans' court for sale of the real estate of the decedent, and the proper court is required to stay all proceedings for sale of the real estate of decedent by execution upon judgments and require the executor or administrator to proceed in the orphans' court. The policy of the law is to carry the settlement of estates into the orphans' court.

In the case of Everman's Appeal, 67 Pa. 335, which was an appeal by a creditor from a decree of the orphans' court ordering the sale of real estate for the payment of the debts of the decedent, the creditor, who had a judgment against the decedent before his death, desired to proceed upon his judgment and sell the real estate in the court of common pleas, and asked the orphans' court to vacate its decree and appealed because it would not. Mr. Justice Agnew, in delivering the opinion of the Supreme Court, said (p. 336):

"The administratrix is the proper person to make the sale, and special provision is made by the Act of 24th February 1834, §§ 35, 36, to restrain a creditor from proceeding to sell by execution, and to compel the administrator to proceed in the Orphans' Court. The policy of the law is to carry the settlement of the estates of decedents into that court, where the creditors as well as the heirs can come and contend for their rights, and if need be, assail the rights of others to recover, if their claims be unjust: Kittera's Estate, 5 Harris [17 Pa.] 416;

Bull's Appeal, 12 Harris [24 Pa.] 286. It is evident, therefore, that as a lien creditor, John W. Everman is not injured by the order of the Orphans' Court and has no right to appeal from it; the order of sale being for his benefit, and an appropriate means of converting the real estate into money on payment of his debt."

In the case of Kitchenman's Estate, 15 Phila. 519, which was a citation to an administratrix to sell real estate in the orphans' court for the payment of debts, Hanna, P. J., said:

"It is clearly the duty of an executor or administrator to comply with the requirements of the act of February 24, 1834, and promptly apply to the Orphans' Court for leave to sell a portion or all the real estate, if necessary, as soon as it satisfactorily appears that the personal estate is insufficient for the payment of 'debts and the expenses of the administration.' And this performance of duty may be enforced by the court under penalty of dismissal. The petitioner is admittedly a creditor and it is not denied by the administratrix that decedent died possessed of real estate applicable to the payment of his debts. It is also admitted that the personal estate has been exhausted. Such being the case, it is incumbent upon the administratrix to proceed to sell the real estate without delay, as contemplated by the act of assembly."

In Wylie's Estate, 7 Dist. R. 748, Penrose, J., says that a sheriff's sale of the real estate of a decedent might lead to a sacrifice of the property and that the purpose of section 35 of the Act of 1834 providing for the stay of execution on a judgment against a decedent until application be made to the orphans' court for the sale of real estate, is to avoid sacrifice of the same, and that the policy of the law is to bring the estate of a decedent into the orphans' court as suggested by Mr. Justice Agnew in Everman's Appeal.

We all know that, upon a sale of real estate by the sheriff, the whole amount of the purchase price must be paid in cash, and in the orphans' court terms are allowed and the payment of the purchase money may be extended over a number of years, so that a better price is ordinarily realized upon a sale of real estate in the orphans' court than by the sheriff in the common pleas. We can see no reason, then, why the accountant should be penalized in the present case because he applied for sale of the real estate of his decedent in the orphans' court, as he was required to do, as soon as he found that there was no personal estate and that there was real estate and a considerable amount of indebtedness against it which could be paid only by a sale of the real estate.

Therefore, the exceptions filed to the auditor's findings of fact no. 6 and no. 7 will have to be sustained.

### Exceptions to credits

The auditor did not allow the accountant credit for costs incurred by him in the proceedings to open the judgment at no. 224 December term, 1931, in favor of Goldie Hebb against the decedent (class "A" claims), and exceptions are filed by the accountant because of this refusal.

In our opinion, the auditor was justified in refusing these claims, because the judgments of Goldie Hebb against the decedent accrued before his death, and upon sale of the real estate of the decedent her judgments are entitled to be paid out of the proceeds of sale in preference to funeral expenses, medical services during the last illness, etc.: Hocker's Estate, 14 Phila. 659; Boud's Appeal, 2 Penny. 241; Bryan's Estate, 4 Phila. 228; Girard v. McDermott et al., Admrs., 5 S. & R. 128; Ramsey's Appeal, 4 Watts 71; Mason's Appeal, 89 Pa. 402.

As we understand the law, the proceeds of the sale of real estate in the orphans' court for the payment of debts are to be first applied to the expenses

incident to the preservation and sale of the real estate and then to liens upon the real estate in order of priority. The sale of real estate by the orphans' court is really for the benefit of the lien creditor. He escapes the necessary costs of an execution and sheriff's sale and has the benefit of the higher price which in all probability is realized upon sale in the orphans' court, and having these benefits he cannot escape the burden of the expenses incident to the sale. In Wenger's Estate, 17 D. & C. 698, which involved distribution of a fund in the orphans' court, raised from the sale of real estate for payment of debts, it was held by Appel, P. J.: "items of cost which contributed to the conservation of the real estate and production of the real estate fund, such as fire insurance, interest on liens, and cost of title searches, as well as taxes, commissions and counsel fees, were proper charges against the real estate fund". See also Teaf's Estate, 7 Pa. C. C. 463.

The only debts, then, that can be paid out of the present fund for distribution prior to the liens against the real estate are the debts which arose from the conservation of the real estate and the production of the fund in court, all of which are necessarily incident to the administration for the purpose of getting the fund for distribution.

The petition to open the judgment of Goldie Hebb was not for the benefit of the estate at all. At the time this petition was filed, the executor knew that there was no personal estate and that the real estate had judgments entered against it far in excess of its value, and even the preferred debts, such as funeral expenses, etc., could not be paid, and the only person who in all probability could be benefited by the opening of this judgment of Goldie Hebb and setting it aside would be Ewing Lumber Company, or perhaps some of the preferred creditors. Under the circumstances, then, he ought not to have presented a petition to open the judgment unless he was indemnified by some person who was interested in having the judgment opened, and if he chose to go ahead without securing such indemnity he will have to bear the burden of his own act.

### Class "B" claims

In this class are included two kinds of claims: (1) Expenses paid by the executor to Thomas M. Hogan for posting sale bills of the first and second sales. These are disallowed by the auditor, and in our opinion should have been allowed as a credit to the accountant. The testimony shows that the charges of $3 for posting sale bills for the first sale and $3 for the second sale were reasonable in amount, and in our opinion the charge so made is very reasonable and should have been allowed as one of the necessary expenses of the orphans' court sale. (2) Charges for services of James L. Hogan as executor and attorney for the estate. The auditor disallows all these claims, and we cannot agree with him in so doing. The amount charged for his services as executor is 5 percent of the total assets of the estate, and it seems to us this is a reasonable amount and should have been allowed by the auditor as one of the necessary expenses connected with the administration of the estate. The auditor does not allow the accountant's claim of $50 for legal services in and about the sale of real estate and $15 for writing the deed, because these expenses were "voluntary, illegal, and unnecessary". They were not "voluntary", because the executor was required under the law to proceed to sale of real estate of the decedent when he found that the personal estate was insufficient to pay the debts, and they were not "unnecessary" because if he had not performed these services he would have been required to employ counsel and pay the counsel for so doing, and it seems to us that these charges are not "illegal". It has been said that an attorney who is also executor of an estate is not under any circumstances entitled to counsel fees in connection with the settlement thereof, but as we understand it that is

not the law in this State. This very question was passed upon by the Superior Court in Griffith's Estate, 96 Pa. Superior Ct. 242, 245, wherein Trexler, J., said:

"An executor who also is an attorney and thereby has broadened the field of his activities in the settlement of the estate, should receive what his services are worth, irrespective of any particular designation which may be applied to such services. In Winsel's Estate, 19 Pa. District Court 659, the late Judge Penrose, judge of the orphans' court of Philadelphia County, stated, 'That counsel was also one of the executors, does not under well settled principles, deprive him of the right to proper counsel fees.' In the Estate of Michael McCloskey, 11 Phila. Reports, 95, Judge Hanna drew the distinction that for all services performed within the line of duty as an executor, he is confined to the commissions for services performed, but if an executor who is also an attorney-at-law should in the course of management of the estate perform duties which are ordinarily confided to an attorney, he is entitled to compensation therefor, citing, in re Mumma's Account, 6 American Law Register 489. See Kalbfell's Estate, 30 Pittsburgh Legal Journal N. S. 325. In Perkin's Appeal, 108 Pa. 314, it was held, 'If professional services, necessary to the proper administration of the trust, have been rendered by a trustee in person, he is clearly entitled to such reasonable compensation as he would have paid had he been obliged to employ counsel. If authority for a principle so manifestly just and reasonable as this be required it may be found in Lowrie's Appeal, 1 Grant *373.'"

As we understand it, then, the executor is entitled to an allowance for legal services where he performs services which the estate would have been obliged to pay for if he had employed counsel to perform the same services, and the ordinary amount allowed to an attorney for services in connection with the sale of real estate in our orphans' court would be about $50. In this case, the executor as attorney had to draw and file the petition for sale, the executor's bond, the return of the first sale, the petition to set aside the first sale, and the return of the second sale, and in our opinion the amount of $50 which the executor claims is very reasonable and will be allowed. According to the testimony, the executor wrote two executor's deeds, and $15 would be a reasonable charge for these services.

The exceptions of the accountant to the auditor's third conclusion of law is sustained, and the items included in class "B" are allowed as proper charges against the estate of the decedent.

### Class "C" claims

This class involves a claim for $6.75 made by the accountant for insurance paid by him pending the actual consummation of the sale. In our opinion, the amount of this claim is reasonable, and it is a legitimate charge against the estate: Wenger's Estate, 17 D. & C. 698; Ketran's Estate, 24 Dist. R. 1087.

Therefore, the exception of the accountant to the auditor's fourth conclusion of law is sustained, and the accountant is allowed credit for insurance paid in the amount of $6.75.

### Class "D" claims

These are for necessary expenses incurred by the executor in probating the will, taking out letters, etc., and are all allowed by the auditor as proper charges on the fund. No exceptions were filed to this allowance by counsel for Goldie Hebb, and we shall allow the credits to the accountant on our restatement of his account.

The accountant filed an additional exception that the auditor failed to allow the Daily Times for publishing notice of audit. This exception is sustained, as

the auditor agrees in his "answer to exceptions" that this is a proper charge against the estate.

According to the record, the auditor does not seem to have passed upon any of the exceptions filed to his report, as he is required to do under Rules 68 and 69 of the court of common pleas of this county, which, under Rule 2 of the orphans' court are adopted as rules thereof, but the case was put down for argument before the court and was argued upon the merits, so that we can consider that all the exceptions filed to the report were overruled by him, with the exception of the additional exception filed by the accountant; and, because we do not choose to delay the distribution of the funds in the accountant's hands by referring the report back to the auditor, we shall consider that the auditor by his "answer to exceptions" intended to overrule all exceptions to his report, except the "additional exception" of accountant, and adjudicate the case, although it would be better practice for us to refer the report back to the auditor and allow him to consider and pass upon the exceptions before we consider them.

The only exception filed by counsel for Goldie Hebb to the auditor's report is that the auditor's fee ought to be paid by the accountant.

The auditor has found that the expenses of audit should be paid out of the estate, and in our opinion this is correct, because under any circumstances, considering the indebtedness of this estate and the questions necessarily incident to a distribution of the fund, an auditor would have had to be appointed even if exceptions had not been filed to his account. Further than that, none of the exceptions filed by counsel for Goldie Hebb should have been sustained by the auditor, outside of the second exception which refers to costs of the proceeding to open the judgment.

### Order

Now, March 21, 1934, the accountant is directed to pay out the balance in his hands according to the foregoing schedule of distribution unless exceptions are filed thereto within 10 days.     From Wm. F. Shutte, Beaver Falls, Pa.