## Gangloff's Estate

L. E. *Bashore*, for petitioner.
J. F. *Mahoney*, contra.

GANGLOFF, P. J., May 12, 1941.—In her will Cora Gangloff, now deceased, devised her real estate in equal shares to her husband, who survived her, and her two children, both adults. The surviving spouse petitioned this court for a citation to show cause why an inquest in partition should not be granted, whereupon a decree was entered awarding a citation as prayed for.

Instead of preparing a citation in legal form the clerk of this court inadvertently prepared a copy of the decree awarding the citation and a copy of the decree was served upon the two children. Thereupon these two children filed their joint petition wherein they question the legality of this notice. That a copy of the decree awarding the citation is not a citation and is therefore a noncompliance with the decree there can be no doubt, and counsel for the surviving spouse recognized this fact, whereupon the following order was entered by agreement of counsel for all the parties in interest:

"And now, February 17, 1941, the return day on the within petition is continued to March 3, 1941, at 10:30 a.m., in order to issue the proper citation upon agreement of L. E. Bashore and J. F. Mahoney, attorneys".

The agreement of counsel and the order entered pursuant thereto turned back the proceedings to the decree awarding a citation but with the return day extended. The order also opened the way for the issuing of a citation as directed in the decree awarding it. This automatically makes moot the questions raised by the two children in their petition questioning the legality of the service upon them of a copy of the decree awarding a citation, although, as already indicated, there can be no doubt that a copy of the decree was not a citation and that service of such copy was not legal notice to the two children.

The next step taken in the proceedings was the issuing of a "proper citation" to be served upon the two children. Of course, this citation, which bears the date of February 17, 1941, was prepared by and in the office of the clerk of the orphans' court. Service was made upon the two children through the sheriff's office and these children thereupon, by separate petitions filed, question the legality of this citation, both as to form and substance.

First, they allege that the copy of the citation in question was attested by the sheriff, through his chief deputy, "in violation of the Act of June 7, 1917, P. L. 363, sec. 13, requiring said copy of citation to be attested in the name of the president judge of the orphans' court alone". The act here referred to is the Orphans' Court Act of 1917, and section 13 thereof provides:

"All process, subpœnas, certificates, copies of records, and other documents, which shall be issued out of any of said courts, shall be attested in the name of the president judge thereof alone".

The citation in question contains the accepted form of attestation of the presiding judge of the court out of which it issued. This attestation is as follows: "Witness the Honorable G. E. Gangloff, president judge of our said court, at Pottsville, Pa., the 17th day of Feb-

ruary, A. D. 1941". This form of attestation of a writ finds approval in both Hanna's Civil Practice Forms and Standard Pennsylvania Practice and is the form used in actual practice. The fact is, however, that the sheriff did not attest the citation. All that he did was to endorse thereon the following:

"A True Copy
Attest:

Fred C. Holman, Sheriff
per Guy E. Waltman
Chief Dep"

It is plainly to be seen that this endorsement is nothing more than a statement by the sheriff that the document is "a true copy". It is not an attestation of the citation. A copy of a writ endorsed "a true copy" and attested by the sheriff is sufficient: Wassell v. Deiter, 11 Sch. Leg. Rec. 45; Timlin-Kelly Co. v. Laman, 27 Dist. R. 787.

Second, they allege that the citation in question "is not issued in the name and by the authority of The Commonwealth of Pennsylvania, as required by article 5, sec. 23, of the Constitution of Pennsylvania". Our examination of the citation in question discloses that this allegation of fact is true. Nowhere in the citation, whether in the caption, the body, the endorsement or anywhere else, do the words "Commonwealth of Pennsylvania" appear.

Article V, sec. 1, of the Constitution of Pennsylvania provides that the judicial power of this Commonwealth shall be vested in, among other courts, the orphans' courts. Section 23 of this same article provides that "The style of all process shall be 'The Commonwealth of Pennsylvania'. All prosecutions shall be carried on in the name and by the authority of the Commonwealth of Pennsylvania, and conclude 'against the peace and dignity of the same' ". This means that process must go in the name of the "Commonwealth of Pennsylvania" but it is immaterial in what part of the præcipe the Commonwealth is introduced, so that the command

is given in its name: White v. Commonwealth, 6 Binn. 179.

It will be observed that article V of the Constitution deals with the judicial power of the Commonwealth and that included as one of the courts of record therein provided for is the orphans' court. Section 23 makes no distinction between courts in its reference to "process"; it fixes the style of all process and certainly this applies to all courts comprising the judicial power of the State. Counsel for the surviving husband suggests that section 23 applies to process in the criminal courts only but this could not be true. If such were the fact the framers of the Constitution would have so stated. Besides, there would have been no necessity to point out in the second sentence of this section that all prosecutions shall be carried on in the same name had the first sentence been intended to refer to criminal courts only.

It is but trite to say that section 23 is mandatory. This mandate is not qualified by proviso or other modifying language. There can be no misunderstanding in the language used. In short, there can be no doubt that all process issuing from the orphans' court must speak in the name of the Commonwealth of Pennsylvania.

Does the word "process" as used in article V of the Constitution include citations? In finding an answer to this question we may properly lean upon a recognized and well-established authority, Blackstone, who states:

"The general, therefore, and orderly parts of a suit are these: 1. The original writ; 2. The process; . . . First, then, of the *original*, or original writ; which is the beginning or foundation of the suit. When a person hath received an injury, and thinks it worth his while to demand a satisfaction for it, he is to consider with himself, or take advice, what redress the law has given for that injury; and thereupon is to make application or suit to the crown, the fountain of all justice, for that particular specific remedy which he is determined or advised to pursue. . . . To this end he is to

sue out . . . an *original*, or original writ, from the court of chancery. . . . It is a mandatory letter from the king, in parchment, sealed with his great seal, and directed to the sheriff of the county wherein the injury is committed, or supposed so to be, requiring him to command the wrongdoer or party accused either to do justice to the complainant, or else to appear in court and answer the accusation against him. . . . The next step for carrying on the suit, after suing out the original, is called the *process;* being the means of compelling the defendant to appear in court. . . ." See 3 Blackstone's Commentaries (Lewis' ed.), chap. XVIII, pp. 272, 273, and chap. XIX, p. 279.

Of course, many of the old forms of procedure no longer are appropriate or proper: Act of January 28, 1777, 1 Sm. L. 429, sec. 3. Roughly corresponding to the original of the days of Blackstone, so far as procedure in the orphans' court is concerned, is the petition and the decree awarding a citation. The manner of proceeding in the orphans' court is "on petition to the court of any person interested . . . setting forth facts necessary to give the court jurisdiction, the specific cause of complaint, and the relief desired, and supported by oath or affirmation", whereupon the court, or any judge thereof, "may award a citation returnable at a day certain". This is precisely what was done in the instant proceeding. Following the presentation of the petition and the award of a citation is the process or means used for bringing respondents into court. In partition proceedings the means used for bringing the parties into court is a citation. Hence, there can be no doubt that a citation, as used in these partition proceedings, is process.

The citation, being a form of process, must speak in the name of the Commonwealth. The citation in question does not so speak. It necessarily follows that the citation in question is not legal process and the service of copies thereof is not legal notice. The second allega-

tion of the two children in their respective petitions must therefore be sustained.

The petitions of the two children contain three additional allegations of errors in the citation in question but it is unnecessary to discuss these because of the action to be taken upon their second allegation.

Now, the relief prayed for by the two children in their respective petitions is that: (*a*) The citation of February 17, 1941, be quashed; (*b*) the service thereof set aside; and (*c*) the petition be dismissed. As already indicated, the citation must be quashed and the service thereof will be set aside. But to dismiss the petition is not warranted.

We have already seen that the petition is the first step in the proceedings and the decree awarding a citation is the second step. No objection has been entered to either the petition or the order. Petitioner is properly in a court having jurisdiction of the subject matter of the proceedings. The two children in effect appear de bene esse; they object only to the citation and the service thereof. Once the citation has been set aside respondents (the two children), as the record stands, are out of court: Everett v. Niagara Ins. Co., 142 Pa. 322. As between the orphans' court and the common pleas court, in partition proceedings, the one which first acquires control of the controversy will retain it to the exclusion of the other and this is so even though the party objecting was not originally named as a party in interest: Doyle's Estate, 291 Pa. 263; McCabe v. Ivory et al., 338 Pa. 572. The error in this case arose solely through the neglect of the clerk of the orphans' court. The surviving spouse as petitioner instituting these proceedings did all that was required of him when he filed his petition with the court. The decree which followed is regular. The remedy is to correct the error but not to penalize petitioner: Metz v. Hoffman, 131 Pa. Superior Ct. 303; Bowman v. Gum, Inc., et al., 327 Pa. 403. How shall the error be corrected?

An alias citation would be in order only where a citation has been issued before in the same cause: see Bouvier's Law Dictionary. While setting aside the service of the citation would not disturb the citation, so that an alias could be issued: Bennethum v. Bowers, 133 Pa. 332; it is also true that where the citation itself is annulled there remains nothing upon which an alias citation could be based. In short, it is quite clear that, once the citation and the service thereof are decreed void and of no force, there remain undisturbed only the petition for the citation and the order awarding it.

The orphans' court, being a court of equity within its statutory jurisdiction, looks to the substance rather than the form in order to do justice to the parties. The fatal defect in the process served in this case must be laid at the feet of the office of the clerk of this court. To correct this defect calls for the application of equitable principles. This court possesses an inherent discretionary power to correct its own records in the interest of justice: Willing's Estate, 288 Pa. 337; Huff's Estate, 300 Pa. 64. The next step, therefore, is the preparation by the clerk and issuing of a citation, legal in form and substance, in accordance with the decree entered January 6, 1941. This latter decree designates a return day which is no longer applicable and it includes as respondent the petitioner, which is unnecessary. The decree, in the light of the record as it now stands, should be and properly may be amended: Kretzer v. Murray, 297 Pa. 451; Huff's Estate, 299 Pa. 200.

And now, May 12, 1941, the citation dated February 17, 1941, is quashed and the service thereof is set aside as null and void, and it is further ordered and decreed that the decree of this court entered January 6, 1941, in this proceeding, be and it hereby is amended to read as follows, namely: And now, January 6, 1941, upon consideration of the annexed petition, a citation is awarded, directed to Newton Moll and Mrs. Pearl

674

Sullivan to show cause why an inquest in partition of the real estate of Cora Gangloff, deceased, should not be granted; returnable Monday, June 9, 1941, at 10:30 a.m.