## Freed Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Benjamin H. Wolf*, for petitioner.

*Louis F. McCabe*, contra.

KLEIN, P. J., January 29, 1954.—Walter B. Freed died intestate, on November 1, 1944, without issue, leaving to survive him a widow, Pauline D. Freed; a nephew, James H. Freed; a niece, Beatrice Freed Nace, and possibly other nieces and nephews, whose identity at the present time is unascertained.

Letters of administration were granted to the widow on November 10, 1944. In the petition for letters of administration she stated that her husband left personal property valued at $14,000 and a piece of real estate situated at 1438 N. 56th Street, Philadelphia. The real estate was awarded to the widow, at a value of $5,400, as her allowance of $5,000, under the provisions of section 2 of the Intestate Act of 1917, on July 8, 1953. No account of the personal estate has ever been filed by the widow or by anyone on her behalf.

The widow, who is now past 72 years of age, has become afflicted with cerebral sclerotic senility, and sometime between September and November, 1952, was committed to the Philadelphia State Hospital, a mental institution, where she is still confined. Shortly thereafter, on December 29, 1952, she was declared incompetent by the Court of Common Pleas No. 7 of Philadelphia County, as of December term, 1952, no. 1211, and Joseph J. Dudley, Esq., was appointed guardian of her estate.

By decree of this court, dated March 3, 1953, Pauline D. Freed was removed as administratrix and the let-

ters of administration which had been issued to her were vacated by reason of her mental incapacity and George W. Cupps, Jr., a member of the Philadelphia bar, was appointed administrator d. b. n.

Mr. Cupps, on May 22, 1953, filed a petition for a citation directed to Lloyd V. Gilliam "to show cause why he should not be declared a trustee ex maleficio of the sum of $1,021.40, belonging to the above estate in his possession, and to show cause why he should not be compelled to account and return the said sum of $1,021.40 to the administrator, d. b. n. of the said estate".

In this petition Mr. Cupps alleges that Lloyd V. Gilliam, respondent, obtained from Pauline D. Freed a note executed by E. J. Elliott, in the sum of $1,000, dated May 19, 1922, in favor of decedent; that on August 19, 1952, respondent procured from E. J. Elliott a check, payable to the estate of Walter B. Freed, deceased, in the sum of $1,021.40, and that respondent cashed this check and used the proceeds for his own use.

Respondent admits all of these averments but contends that he "became entitled to and was the owner of the proceeds of the said check" by reason of services he rendered to the administratrix at her request in assisting her in the administration of the estate and to her personally.

There can be little question concerning this court's jurisdiction over the subject matter of this dispute. The orphans' court, although a court of limited jurisdiction, has full and complete power to compel a third party to restore property to the estate of a decedent if such property was at one time in the possession of the administrator or executor, or if it was in the possession of decedent at the time of his death: Cutler's Estate, 225 Pa. 167 (1909); Williams' Estate, 236 Pa. 259 (1912); McGovern's Estate, 322 Pa. 379, 381 (1938); Keyser's Estate, 329 Pa. 514 (1938); Tom-

kovic Estate, 368 Pa. 487 (1951) ; Fell Estate, 369 Pa. 597 (1952) ; Perri v. Chiavaroli, 370 Pa. 495 (1952), and Kevra Estate, 173 Superior Ct. 229 (1953).

It is difficult for us to know with certainty the theory upon which respondent relies in justification of his retention of the proceeds of the check which he collected for the benefit of and payable to the order of the estate of this decedent, as Mr. McCabe, his counsel, failed to furnish us with a brief in support of his position.

Since respondent's claim did not arise until after decedent's death, it seems evident that he does not have the right of set-off. A claim for set-off must be perfected in the lifetime of decedent and may not be invoked with respect to property which was in decedent's possession when he died: Tekane's Estate, 28 Northamp. 137 (1941).

The only other theory under which respondent could possibly keep the money he obtained from cashing Mr. Elliott's check is that he has a lien against the fund. It seems clear to us, however, that respondent has no such right of lien for the services he claims to have performed for the benefit of the estate or for the administratrix, personally.

We have considerable doubt whether respondent, even if he were an attorney employed by the administratrix, would have the right to enforce a lien for his legal services against the proceeds of a check cashed by him but made payable to the estate of decedent. An attorney's lien[*] is the right to retain possession of documents, money or other property of his client coming into his hands by virtue of the professional relationship, until he has been paid for his services. Such a

---

[*] For an interesting discussion of this subject generally see: Note by Marcellus H. McLaughlin, Jr., entitled "The Attorney's Lien in Pennsylvania," 54 Dick. L. Rev. 62.

lien is merely passive and may not be enforced by sale: Smyth v. Fidelity and Deposit Co. of Maryland, 125 Pa. Superior Court 597 (1937), affirmed 326 Pa. 391.

In Yungker's Estate, 20 Dist. R. 362 (1911), this court ruled that an attorney employed by an executor has no lien on papers of decedent's estate for his fees, and on the death of the executor must surrender all papers to the administrator d. b. n. c. t. a. In this case, Gummey, J., said:

". . . but we do not think that any one of the cases cited by counsel for the respondent goes so far as to hold that an attorney-at-law may hold papers belonging to the estate of a decedent such as is the case at bar. The respondent was counsel for an executor who is now dead; the papers were not the papers of the executor, but of the estate which he represented, and to hold that the respondent had a lien on them or could withhold them from the representative of the estate as a means of forcing payment of his claim for services, would establish a dangerous precedent, particularly as the respondent has ample remedy in that he may cite the administrator d. b. n. c. t. a. to file his account and at the audit thereof can present his claim, and, if a proper one, may have it allowed."

See, also, Wanamaker's Petition, 25 D. & C. 694 (1936); Huff's Estate, 299 Pa. 200, 210 (1930).

In the present case, however, Lloyd V. Gilliam, respondent, is not an attorney and is not authorized to engage in the practice of law. He is not clothed with the authority or entitled to the protection afforded lawyers in the performance of their professional duties. At most he was an agent employed by the administratrix and as such there is serious doubt, under the circumstances of this case, as to his right to enforce any claim for compensation against this estate.

On its face respondent's position appears to be dubious, fraught with suspicion and untenable. Re-

spondent admits that he applied to his own use the proceeds of a check made payable to the estate of decedent. It was his duty to deliver this check to the administratrix and it was her duty to apply it to the credit of this estate. This check did not belong to the administratrix personally. It formed part of her husband's estate and she held it in her capacity as his personal representative for the benefit of everyone having an interest in the estate, including the Commonwealth, creditors and decedent's next of kin. She was wholly without right or authority to give the check to respondent and he was equally without right or authority to cash the check and to appropriate the proceeds to his own use.

One of the principal responsibilities of probate courts, generally, is to make certain that the interests of aged widows are safeguarded, particularly when dealing with strangers in connection with the administration of the estates of their deceased husbands. In the present case, we cannot overlook the significant facts that Pauline D. Freed, by respondent's own admission, did not become acquainted with him until March 1952, and that she was adjudged an incompetent and committed to a mental institution shortly after this questioned transaction took place. In our opinion, under the admitted facts of this case, it is not only our right, but also our bounden duty to direct respondent to deliver to the administrator d. b. n. the money he has collected and retained for his own use.

We are, however, not attempting at this time to prejudge or pass upon the merits of respondent's claim for services against this estate or against Pauline D. Freed, personally. The decree which we are entering is without prejudice to respondent's right to present a claim for his services at the audit of the account of the administrator d. b. n. or against the widow personally in an appropriate court.

We accordingly enter the following

*Decree*

And now, January 29, 1954, Lloyd V. Gilliam, respondent, is ordered and directed to pay over the sum of $1,021.40 to George W. Cupps, Jr., the administrator d. b. n., within 15 days of service of a copy of this decree.