Pennsylvania Mining Company *v.* Martin, Appellant.

210    53
29 SC  249

*Vendor and vendee—Sale of coal—Option—Laches—Specific performance.*

Where an agreement for the sale of coal states that it is the intent of the agreement to give the purchaser " an option or privilege of buying said described coal . . . . at any time within nine months from the date hereof," the vendee may complete the purchase and secure an equitable title for himself, by giving notice without tender of purchase money, within the nine months, of his acceptance of the coal.   In such a case a delay of two years on the part of the vendee to begin suit will not deprive him of his right to the specific performance of the contract.

Argued Oct. 20, 1904.   Appeal, No. 154, Oct. T., 1904, by defendant, from decree of C. P. Washington Co., No. 1238, in equity, on bill in equity in case of Pennsylvania Mining Company v. Charles E. Martin et al.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.   Affirmed.

Bill in equity for specific performance.

McILVAINE, P. J., found the facts substantially as follows.

1. On June 17, 1899, the defendants signed, sealed and delivered to John R. Cavanagh, doing business as Cavanagh & Co., an agreement whereby they agreed " to sell and upon the acceptance of the option and privilege hereafter set forth convey unto said purchasers, their nominees or assigns, all the coal underlying " a certain tract of land.

"Said vendor hereby covenants and agrees that they shall and will on payment of purchase money hereafter provided by good and sufficient deed, clear of all liens and encumbrances whatsoever unto said purchasers, their heirs or assigns, the

above described coal, together with the coal rights and privileges connected herewith."

" In consideration whereof said purchasers agree to pay unto said vendor the sum of thirty-five dollars per acre in cash therefor as shown by said survey, on compliance by said vendor with all the foregoing and above mentioned covenants and agreements."

" It is hereby agreed that the true intent and meaning of this agreement is to give to said purchasers, their nominees or assigns, an *option* or *privilege of buying* said *described coal*, coal rights and privileges, under the terms named, at any time within nine months from the date hereof."

" In case said purchasers, their nominees or assigns, shall not accept the above right to purchase said coal, coal rights and privileges within the time limited herein, then this agreement shall forthwith become null and void and the said purchasers at their option be fully released from all liability and obligation of any and every kind whatsoever hereunder."

2. On December 20, 1899, the Pennsylvania Mining Company, the plaintiff in this case, in good faith purchased and Cavanagh & Co. sold to it, all the rights which vested in him, John R. Cavanagh.

3. On March 14, 1900, the Pennsylvania Mining Company, the plaintiff, in good faith, intending thereby to become the purchaser of said coal, served upon the defendants a written notice of its purchase and its intention to take under the agreement and requested deeds and abstracts of title for examination.

4. That since March 14, 1900, up to the filing of the bill in this case, the Pennsylvania Mining Company has always been ready, willing and financially able, and before the filing of the bill offered to pay to the defendants the purchase price for the coal upon their complying with their covenants, but that defendants have claimed that the right of the Pennsylvania Mining Company, to receive a deed of conveyance for said coal had ceased to exist and have refused and now refuse to convey said coal to the said Pennsylvania Mining Company for the reason that the right of the Pennsylvania Mining Company to pay the purchase money and demand a deed of conveyance expired on March 17, 1900.

On these facts the court found as conclusions of law:

1. That the Pennsylvania Mining Company on March 14, 1900, when it served the written notice upon the defendants, became the purchaser of said coal and vested with an equitable title thereto.

2. That the defendants' denial of the plaintiff's right to make payment and receive a deed of conveyance after March 17, 1900, estops the defendants from claiming that the plaintiff was guilty of laches in making its tender and in bringing suit.

3. That the plaintiff is entitled to a decree of specific performance against the defendants upon its paying the purchase price of said coal with interest from March 17, 1900.

After a very careful reading of the article of agreement given by the defendants to Cavanagh & Co., and a thoughtful consideration of the able argument found in the brief of defendants' counsel, we are of the opinion :

1. That the article of agreement when given was unilateral, or in other words a nine months option to purchase the coal in question on certain terms.

2. That when the plaintiff as assignee of Cavanagh & Co., on March 14, 1900, gave to the defendants the written notice that it accepted said coal, the article of agreement and written notice together thereafter constituted an inter partes agreement for the purchase of said coal, which vested in the plaintiff an equitable title and made it liable for the purchase price named.

Time was of the essence of the unilateral agreement and had the Pennsylvania Mining Company not accepted the coal until after March 17, 1900, the defendants could have successfully claimed that the acceptance came too late—that the option to purchase only extended to March 17, 1900, and that time was of the essence of the contract. But the acceptance within the time named converted the unilateral agreement—the option— into an agreement inter partes—a binding agreement for the sale of real estate. And in this binding agreement thus consummated, there is no covenant that if the purchase money is not paid and deed of conveyance passed on March 17, 1900, the contract of sale consummated by the written acceptance shall become null and void : Pennsylvania Mining Company v. Smith, 207 Pa. 210.

Some stress was laid at the argument on the fact that this suit was not brought until two years and one month had elapsed

since the date fixed for the payment of the purchase money. The only laches that the defendants are in a position to complain of is that they were not sued as soon as they might have been; but laches of two years in bringing a suit in equity is not a bar to the suit. A claim otherwise just does not become "stale" because the plaintiff has not brought suit as soon by two years as he might have done. And as to the tender of the purchase price, the defendants are not in position to complain of laches on the part of the plaintiff, for their claim is that since March 17, 1900, the plaintiff had no right to tender the purchase money and demand a deed and they would not have made a deed if the purchase money had been tendered. After March 17, 1900, the defendants were not ready and waiting to make a deed when the purchase price would be paid; on the contrary, after that date they were adverse to the performance of the contract. Pomeroy, in his Equity Jurisprudence, Vol. III, sec. 1408, states the rule in these words : " the party who desires to maintain an objection founded upon the other's laches must show himself to have been ready, desirous, prompt and eager for performance." The defendants' claim is that the plaintiff failed " to buy " the coal on or before March 17, 1900, and that after that date no contract existed between the parties. If no contract existed between them and the plaintiff and they were acting on that claim, then they could not claim that after March 17, 1900, they were always ready and willing to perform, but that the plaintiff was not, and therefore equity ought to now relieve them of performance on account of the plaintiff's laches.

The argument pressed upon the court by counsel for the defendants, that the words " an option or privilege of buying said described coal " found in the original article of agreement, meant the payment of the purchase price by the plaintiff and the delivery of a deed of conveyance by the defendant, is ingenious, but to our mind not convincing. In the first place such construction is not in harmony with other parts of the agreement. The plaintiff was " to accept the right to purchase said coal within the time limited." The time that the parties were to take in closing up the transaction after " the right to purchase had been accepted " is not mentioned in the agreement. Again, the word " buy " when applied to a real estate

transaction more often describes the passing of the equitable title from the vendor to the vendee than it does the exchange of the full purchase price and the deed of conveyance. Usually preliminary articles of agreement, are entered into that an examination of title and for liens and encumbrances may be made before the deed of conveyance is delivered and the purchase price paid. The vendor sells a farm and the vendee " buys " a farm when the article of agreement fixing the price, time of payment, time of execution of deed of conveyance and time possession is to be given, is executed. After that the vendee is the beneficial owner of the land. He has bought the farm. The " buying " is over and what comes afterwards, at least so far as the vendee is concerned, is the giving to the vendee that which shall be evidence of the title. In equity the title has already passed.

One reason that time in a contract for the sale of real estate is not in equity of the essence of the contract unless expressly made so by the parties, is because compensation for the delay in performance can be made in the final decree by allowing interest if the delay is in not paying the purchase price on the day named. In this case before us we are of the opinion that it is but equitable to require the plaintiff to pay interest on the contract price from March 17, 1900. The defendants' contention is not so unreasonable as to characterize their defense as trivial and vexatious and it was no doubt honestly made under the legal advice of reputable attorneys. This taken into consideration with the plaintiff's delay of two years in bringing this suit, we are of opinion would make it inequitable to grant the plaintiff a decree of specific performance without requiring it to pay interest.

And now, April 15, 1904, it is ordered that the foregoing adjudication be filed in the prothonotary's office and if no exceptions be filed that a final decree be prepared in accordance therewith.

*Error assigned* was decree of specific performance.

*John C. Bane,* with him *R. W. Irwin,* for appellant, cited as to the construction of the contract: Patchin v. Lamborn, 31 Pa. 314 ; Fessler's App., 75 Pa. 483 ; Reed v. Breeden, 61 Pa.

460; on the question of laches, Du Bois v. Baum, 46 Pa. 537; St. Andrew's Church's App. 67 Pa. 512; Washabaugh v. Stauffer, 81* Pa. 497; Rennyson v. Rozell, 106 Pa. 407.

*John G. MacConnell* and *James I. Brownson,* with them *John W.* and *Alvin Donnans,* for appellee were not heard, but cited as to the construction of the contract: Corson v. Mulvany, 49 Pa. 88; Kerr v. Day, 14 Pa. 112; Newell's App., 100 Pa. 513; Frick's App., 101 Pa. 485; People's Street Ry. Co. v. Spencer, 156 Pa. 85; Napier v. Darlington, 70 Pa. 64; Willard v. Tayloe, 75 U. S. 557; Penna. Mining Co. v. Smith, 207 Pa. 210.

PER CURIAM, November 4, 1904:

This judgment is affirmed on the opinion of the court below.