# Atlas Portland Cement Co. *v.* American Brick & Clay Co. et al., Appellants.

*Appeals—Assignments of error—Equity—Findings of fact—Final decree—Question not raised below—Effect of findings.*

1. The act of the court below in an equity suit commanding action, and one that must always be assigned as error on appeal, is the final decree.

2. Unless the final decree is assigned, there is not only no record in the appellate court on which to base a decree of reversal, if the case requires such action, but there is also nothing to reverse.

3. The findings of fact and conclusions of law on which the final decree is based are the necessary elements to sustain the decree.

4. If the chancellor is mistaken in any of the findings either of law or fact, the overruling of exceptions thereto should be assigned as error.

5. The assignment of the final decree does not permit consideration of all manner of alleged errors in findings, conclusions, admission of evidence, and the like.

6. Should the final decree only be assigned the findings of fact are admitted.

7. Trial errors and mistaken findings or conclusions must be separately assigned.

8. Questions not raised in the lower court will not be considered on appeal.

9. Findings of fact by a chancellor have the effect of a verdict of a jury, and will not be disturbed on appeal where there is evidence to support them.

*Equity — Specific performance — Option—Acceptance of option —Tender or payment of purchase money—Vendor and vendee— Corporations—Fraud—Knowledge of agents.*

10. Where an option to purchase real estate does not require payment of the purchase money at the time of the acceptance of the option, tender or payment of the money is not required when the option is accepted; payment must be made within a reasonable time thereafter.

11. Where an option is accepted in writing with additional terms, the optioner may reject the acceptance, but, if he fails to do so, he is bound by the acceptance as written.

12. Where an option given by a corporation is accepted in writing with alleged additional terms, the fact that the corporation

prepared and actually executed a deed for delivery, is evidence bearing on the fact that the acceptance of the option as written was not rejected.

13. Where a vendor wrongfully sells a property, after the acceptance of an option on it, a subsequent tender of the purchase money by the optionee is futile and unnecessary.

14. Where a corporation gives an option to purchase land, and the optionee accepts the same, and such acceptance is not rejected, the corporation cannot thereafter, by alleging fraud committed upon it by the purchaser's agent, refuse conveyance, where the court finds as a fact that the refusal was based not so much on the misrepresentation of the agent as on an opportunity to sell the land to another party at an enhanced price.

15. All the more will the court decree specific performance in such case where it appears that the record purchaser was a new corporation composed of the parties interested in the old one, with two figureheads.

16. When individuals or corporations transfer their property to a new corporation, substantially owned and controlled by the transferers, the new corporation takes the property subject to the rights of persons who have claims against the transferers.

17. If one makes a contract to sell real property, but conveys it to another than the original vendee, the original vendee can obtain specific performance from the one to whom the conveyance was made, if such grantee took with knowledge of the contract.

Argued March 10, 1924. Appeals, Nos. 130-132, Jan. T., 1924, by Keystone White Clay Products Co., David Crear, and American Brick & Clay Mfg. Co., from decree of C. P. Monroe Co., Dec. T., 1920, No. 12, on bill in equity, in case of Atlas Portland Cement Co. v. The American Brick & Clay Manufacturing Co., Margaret F. Armstrong, T. A. Grace, W. I. Hibbs and L. Keller Brubaker, Directors and Trustees, David Crear and Keystone White Clay Products Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for specific performance. Before SHULL, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendants took separate appeals.

*Error assigned* was, inter alia, decree, quoting it.

*W. L. Pace,* for appellants.—The evidence in this case abundantly shows that Owen Heller as agent for plaintiff corporation procured the option in question by deception and unfair means by making statements and representations to officers and directors of the American Brick & Clay Manufacturing Co. which he either knew to be untrue or did not know to be true: Lake v. Weber, 6 Pa. Superior Ct. 42; Braunschweiger v. Waits, 179 Pa. 47; Brown v. Pitcairn, 148 Pa. 387; Mansfield v. Redding, 269 Pa. 357; Jackson v. Ashton, 11 Pet. 229.

Where the contract appears inequitable, or is incomplete, or is unfair, or when mutual mistake in matter of substance, or fraud, etc., appear, the remedy will be denied: Henderson v. Hays, 2 Watts 148; Friend v. Lamb, 152 Pa. 529; Piersol v. Neill, 63 Pa. 420; Rice v. Findlay Co., 19 Pa. Dist. R. 601; Tyson v. Passmore, 2 Pa. 122; Bower v. Fenn, 90 Pa. 359.

*W. S. Kirkpatrick,* of *Kirkpatrick & Maxwell,* with him *C. Raymond Bensinger,* for appellee.—The election of the optionee must take place within the time limit for such election, and notice of the election being given it then becomes an ordinary contract for the sale of land, and there being no time limit for the payment of the purchase price, it could only be payable upon a proper tender of good and sufficient deed for a marketable title: Penna. Min. Co. v. Smith, 207 Pa. 210; Penna. Mining Co. v. Martin, 210 Pa. 53; Hannan v. Carroll, 277 Pa. 32.

Knowledge of a fact acquired by agent at time when he is not acting as such, if actually had in mind by him when afterwards acting for his principal, will, as respects that transaction, be imputed to the principal: Wilson v. Fire Ins. Assn., 1 Am. St. R. 659; Simmons Creek Co. v. Doran, 142 U. S. 417; The Distilled Spirits, 11 Wall. 256.

Questions not raised in the lower court will not be considered on appeal: G. B. Hurt v. Canneries Co., 263 Pa. 238; Sullivan v. R. R., 272 Pa. 429; Minenberg v. Rash, 79 Pa. Superior Ct. 349.

OPINION BY MR. JUSTICE KEPHART, April 28, 1924:

The court below decreed specific performance of a contract. Appellants, under an assignment of the decree as error, asks the court to consider errors in findings of fact. The act of the court below commanding action, and the one that must always be assigned as error on appeal, is the final decree, and, unless assigned, there is not only no record here on which to base a decree of reversal, if the case requires such action, but there is also nothing to reverse. The findings of fact and conclusions of law on which the decree is based are the necessary elements to sustain the decree. If the chancellor is mistaken in any of them, the overruling of exceptions thereto should be assigned as error. The assignment of the final decree does not permit consideration of all manner of alleged errors in findings, conclusions, admission of evidence, and the like. Should the final decree only be assigned, the correctness. of findings of fact is admitted. With these admissions, the question that will then be presented is, Do the findings support the decree? Trial errors and mistaken findings or conclusions must be separately assigned: Spiese v. Mutual Trust Co., 258 Pa. 422; Lehigh Valley Trust Co. v. Strauss, 258 Pa. 382; McCully v. McCrary, 269 Pa. 581.

We will not consider findings of fact not specifically assigned as error, and will not here mention those discussed under the assignment relating to the final decree except, however, the authority of appellee's agent to make or accept a binding contract, and then only to say the extent of the agent's authority was not raised in the court below, nor brought to its attention. Questions not raised in the lower court will not be considered here on appeal: G. B. Hurt v. Fuller Canneries Co., 263 Pa. 238;

Sullivan v. B. & O. R. R. Co., 272 Pa. 429, 436; Minnenberg v. Rash, 79 Pa. Superior Ct. 349.

We now approach the case with this principle of law firmly fixed: Findings of fact by a chancellor have the effect of a verdict of a jury, and will not be disturbed on appeal where there is evidence to support them: Glenn v. Tress, 276 Pa. 165; Bangor Silk Knitting Co. v. Wise, 277 Pa. 415.

The American Brick & Clay Manufacturing Company, hereinafter termed the Clay Company, was a defunct corporation, and the directors then in office were trustees to liquidate and dissolve it. Appellee secured from a majority of the directors an option to purchase for $3,000 certain clay land located in Monroe County. The instrument continued in effect until December 24, 1919. The court below very properly found that before the 24th of December, 1919, the company, in writing, accepted the option. We need not detail the many circumstances on which this finding is based. The option did not exclusively determine how the notice of acceptance was to be given, and there is nothing in the option to prevent personal delivery.

The option became a completed contract on the 23d of December, 1919. It was not necessary to pay any part of the purchase price at the time of acceptance. The option did not require it. Acceptance in writing was the only thing necessary to make a binding contract of sale; the purchase money must then be paid within a reasonable time thereafter. There is no merit in the contention that it must be tendered or paid when the option was accepted. See Pennsylvania Mining Co. v. Smith, 207 Pa. 210; Pennsylvania Mining Co. v. Martin, 210 Pa. 53, 56, 57.

We need not discuss the legal effect of the instrument as written; the notice of acceptance contained this provision: the optionee was "ready to pay the sum of $3,000 upon receipt at this office of a good and sufficient deed free and clear of liens and encumbrances." If the Clay

Company thought the acceptance imported new terms it could have rejected it, but, from the correspondence, the resolutions of the company and the conduct of its officers in endeavoring to clear the title, we are satisfied the so-called "foreign matter" was accepted and made a part of the contract, and acted on by the company. The same conclusion is reached with respect to payment of purchase money and delivery of deed at appellee's office in New York City.

No doubt one of the most convincing facts before the chancellor, if there can be one more than another establishing the fact of acceptance with the additional terms as part of the contract, was that a deed pursuant to a resolution of the Clay Company was actually executed for delivery. This fact, in conjunction with the company's part in having the title cleared of liens, together with the correspondence between the officers, their counsel and the appellee in relation thereto, must have been persuasive with the learned judge. While there was some delay in evincing a desire to close the deal, this was occasioned by failure to have the record cleared. When that was completed, appellee did all it could possibly do to affirm its willingness to close the matter, but the Clay Company had meanwhile sold the property. A tender of purchase money then was futile; none was necessary: Henry v. Rainman, 25 Pa. 354, 361; Hannan v. Carroll, 277 Pa. 32.

But, says the Clay Company, conceding there was a duly accepted option, followed by an executed deed, and the transaction all but completed, we learned of certain gross impositions on the directors through the false representation as to the value and characteristics of the land made by Heller, an agent of appellee, and, while therefore ready to convey, because of these matters the option was rescinded by resolution. What was rescinded? An unaccepted option,—a contract they first say never existed? The position now assumed, and the one originally contended for, are inconsistent.

Without comment on this dual attitude, we conclude with the court below, after careful examination of the record, that, while some false statements were undoubtedly made, they were not the controlling factors in moving the directors of the Clay Company to act. The persons financially interested in the company were in a position to know the character and thickness of the seam of clay on this property, and what could be done with it. Mrs. Armstrong, a director, as we understand from this record, who did not own any stock, had been on the property, down a shaft, where she could see and learn something about the vein. See Southern Development Co. v. Silva, 125 U. S. 247; Andrus v. St. Louis Smelting & Refining Co., 130 U. S. 643. Since the closing of the deal hung fire for some time, all parties had opportunity to learn its true condition. But, nothwithstanding this, had their acts been predicated on good faith, the court below might have hesitated to decree specific performance; yet, in considering the false representation in connection with the conduct of all appellants in subsequently disposing of the land, his judgment no doubt was very much influenced as to the weight to be given the evidence claiming to sustain the allegation "that reliance was had on these false statements."

The Clay Company, for one dollar, conveyed this property to David Crear, and later it was conveyed by him, for $22,000, to a corporation formed the day before the sale to Crear by persons either interested in the Clay Company or closely affiliated with the principal stockholder, being employees with him in another general business. By these acts they hoped to escape the contract and reap an additional price through other means. The motive which prompted the rescission was not false representation, but, of more importance, a desire for a possible better bargain, notwithstanding the price to be paid by appellee was a large one.

A chancellor should not waste much time piercing a transaction of this character. All persons had honestly

made a contract of sale, it was accepted, and acted on in good faith. Appellee, relying on the sale, no doubt adjusted itself to meet this condition; it should not be deprived of any right merely because one of the parties imagines a little more money or other advantage can be secured by holding the property.

The court below was clearly right in decreeing specific performance. It is not so much the question as to whether David Crear, the intervening purchaser, had notice of appellee's contract of sale, as it is the fact that the persons to whom he sold were, in law, the same persons from whom he bought and who had previously agreed to sell to this appellee. The mere fact that they called themselves the American Brick & Clay Manufacturing Company, under the contract of sale, and, later, in the ownership of the property, the Keystone White Clay Products Company, is immaterial, even though two corporations of different names appeared as parties. Brubaker (Mrs. Armstrong may be included) and the directors and principal stockholders in the Clay Company, were the promoters, directors and principal stockholders in the Products Company. All of the interested parties in the first corporation were associated with Brubaker in the second. The only difference was, in the second company two business associates of Brubaker who were not in the first company appeared as incorporators. The court below would have been amply warranted in finding, under the circumstances, that the latter were mere figureheads. We will not permit such a travesty of justice to be carried out under the screen of a corporate name.

As stated in Delphia Knitting Mills Co. v. Richards, 62 Pa. Superior Ct. 9, 12, "'When individuals or corporations transfer their property to a new corporation, substantially owned and controlled by the transferers, the new corporation takes the property subject to the claims of the nonassenting creditors of the transferers: Montgomery Web. Co. v. H. Dienelt et al., 133 Pa. 585;

The Pennsylvania Knitting Mills of Reading v. Bibb Manufacturing Company, 12 Pa. Superior Ct. 346. It is not so much a question of notice of fraud being brought home to the new corporation as that Wolf was in reality the corporation, owning, under another name, practically all its stock, and the property. That the stock stood in his wife's name would not alter the case." See Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co., 16 Md. 456. The fact that an intervening person was used to carry out the plan would not legalize it. There is sufficient in this record to hold not only that the second corporation, through its principal officers, had notice of the defect in title when it acquired the property (Simmons Creek Coal Co. v. Dovan, 142 U. S. 41), but they were in reality the parties who contracted to sell to appellee.

If one makes a contract to sell real property, but conveys it to another than the original vendee, the original vendee can obtain specific performance from the one to whom the conveyance was made if such grantee took with knowledge of the contract: Northern Central Ry. Co. v. Walworth, 193 Pa. 207. But if the grantee was a bona fide purchaser for value without notice, the vendee can have no relief against him; nor can he have relief against a purchaser with notice who purchased from the bona fide purchaser: 36 Cyc. 763. "But if the second purchaser in such case be the original trustee, who reacquires the estate, he will be fixed with the trust." And specific performance will be decreed against him: Church v. Ruland, 64 Pa. 432, 444. See also Perry on Trusts and Trustees, 6th ed., 370.

All the assignments are overruled, and the decree of the court below is affirmed, at the cost of appellants.