## Kane's Estate.

Argued October 14, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

118

*Michael A. Maloney,* with him *Raymond A. White, Jr.,* for appellant.

*Joseph P. Gaffney,* with him *Joseph P. Gaffney, Jr.* and *Frank W. O'Donnell,* for appellees.

OPINION BY STADTFELD, J., January 31, 1936:

These are three appeals involving the same question, arising from the account of William Kane, Administrator, in the estate of Rev. James J. Kane, deceased. The first appeal is from the dismissal of exceptions to the decree of distribution; the other two appeals are from the refusal of petitions for review and involve the same question. All may be disposed of in one opinion.

Rev. James J. Kane died April 5, 1933, intestate, unmarried and without issue, leaving as heirs at law only collaterals. Letters of administration were granted to the accountant on April 13, 1933.

Michael J. Noone, Substituted Trustee of the estate of Robert Kane, deceased, presented a claim in the sum of $9,057.32, with interest from April 29, 1928. The basis of the claim was the award by the Orphans' Court of Philadelphia County, by adjudication dated August 29, 1928, in the estate of Robert Kane, deceased, No. 1426 April Term, 1928. The account then adjudicated was the account of James J. Kane, executor of the will of Robert Kane, deceased.

Robert Kane died September 24, 1914, leaving a will wherein he appointed his brother, the said Rev. James J. Kane, executor. By his will, he left his estate to his wife, Helen, for life, and after her death, to his children then living, and the children of any deceased. The estate included, inter alia, a running retail coal business at 1923-31 Washington Ave., Philadelphia. The will contains nothing whatever about continuing to conduct the coal business of the decedent. Nevertheless, from the death of Robert Kane, September 24, 1914, until October 20, 1928, Rev. Kane continued to conduct the business of retail coal dealer, with the daily fluctuations of debit and credit which would ensue in such a business.

The First and Final Account of Rev. Kane as executor, was filed May 3, 1928, and adjudicated August 29, 1928. The last date of any item of debit or credit in the account was October 21, 1927, although the business was conducted until October 20, 1928. The award, inter alia, was to a trustee to be appointed, of the sum of $12,176.67, composed as indicated in the account which included a personal and a real estate account. Michael J. Noone, appellant, the trustee for the life tenant, was appointed September 20, 1928, and took possession of the business assets on October 20, 1928.

The award of August 29, 1928, consisted of cash and the assets of a coal yard, in all totaling $12,176.97. Of this amount, $7,267 represented the proceeds of the sale of real estate, all of which the appellant admitted receiving with the exception of $500.63. The remaining $4,909.97 of the amount awarded to appellant by the adjudication, was composed of the assets of the coal yard that belonged to Robert Kane, deceased, during his lifetime. Appellant, according to the adjudication, admitted receiving on account of the award, at the audit of October 8, 1934, assets totaling $3,979.15, leaving a deficit on this item of $930.82. To this amount received

should be added balance on hand of proceeds of sale of real estate, $6,766.37, making a total of $10,745.52. Against this, it is claimed there were outstanding liabilities of the yard in the amount of $7,033.73. The Trustee claimed, therefore, to have received in payment of the award, only $3,119.65.

The Trustee's claim was made up of the alleged deficit of $930.82, unpaid balance of cash from proceeds of real estate, in the sum of $500.63, accounts payable of the coal yard business at the time he took possession, $7,033.73, taxes for the year 1928, $541.50, and interest account of mortgage, $50.64, making a total of $9,057.32.

The assets awarded did not appear in the award to be subject to any liabilities. The Trustee claimed that the coal on hand, stated in the award to be $3,616.97, was only $846.65. According to the adjudication, the firm of accountants who had prepared the original account and to whom the differences were referred, conjectured that this difference was due to the fact that the inventory of coal was a book inventory only, obtained by deducting all the coal sold from all the coal purchased, and not taking into account the natural loss in storage, handling, etc., which a physical inventory would have revealed. The physical inventory taken by the Trustee was an estimate made by the eye and not by the scales.

The alleged deficiency between the award and delivery on account of it was reported by the accountants to be the result of numerous errors and deplorable bookkeeping on the part of the employees of the deceased executor, and it was not claimed that he had profited personally in any manner.

Quoting from the opinion of the auditing Judge, VAN DUSEN, J.: "If Father Kane did not have the principal on hand because the coal which he thought he had was not actually in the yard, and because the money which he ought to have kept with which to pay the liabilities

had been paid out to the life tenant (which seems to be the case) it is his loss. In justice to Father Kane it must be said that his executor's account shows that he paid out to Helen Kane, the widow of Robert Kane, some $7,000 in excess of the income which he had received from the estate, and that he waived any claim for reimbursement. The shortage of $500.63 in the real estate account also seems to be the result of mistaken generosity towards Mrs. Kane. Even if I am wrong in my thought that the assets of the business cannot be made to pay the liabilities which the executor incurred in running the business, it is impossible for me to see how the executor personally is liable to the trustee who succeeded him (whatever his personal liability might be to creditors) for the liabilities of the business in excess of the assets of the business. The trustee is not personally liable for these debts, and the real estate and proceeds of the sale thereof are not liable for these debts. *If he was not barred by laches,* and if there was sufficient evidence from which a finding as to the extent of the liabilities could be made, still all that the trustee could say, is that what he got, to wit, $3,979.15, was encumbered with liabilities to full value and more, that is to say, that the assets which he ostensibly got were eaten up by liabilities. This consideration would confine his claim for the personal estate in any event to $4,909.97, the balance shown by the account." (Italics supplied).

Quoting further from the same opinion: "As to the liabilities, I will pass over for the time being some objections which are hereinafter noted, and grant for the sake of argument that the claimant might show that the assets which he was to get, and which, according to the award, were clear of encumbrances, were in fact eaten up by the liabilities of the coal business. This would not be attacking the award, but would be showing that the apparent performance of the award which resulted

from the delivery of certain assets was not a real performance because the assets were not what they appeared to be. But the burden of showing this would be on the claimant. He now becomes the actor; *and though he is not in form calling upon the executor to account; in substance, he is doing so.* He is seeking to charge the executor with acts done while in possession of the trust assets which fastened liabilities upon the same. He has been negligent in pressing this claim. ...... The claimant recognized, as we all must do (supposing that the executor had any right to go on buying and selling and giving credit and incurring expenses at all) that the subject matter which was being dealt with was not fixed, and that the composition of it was changing from day to day. He could never expect to get exactly $430.25 in cash, for example, and especially not after a year's business had been done. Therefore, what he actually got can only properly be reconciled with and related to the items of the award, by stating an account of the year's business. Without such an account it would be unfair to both parties to take the admitted receipts of October 20, 1928, of $3,979.15 and apply them against the award of $4,909.97, though this is what the claimant actually does. How far this delivery was a performance of that award we do not know and we cannot know without an account. The burden of stating such an account was in the first instance on Father Kane; but the burden of pressing for it and following up the claim was on the trustee, and he is now too late." (Italics supplied).

As to the Accounts Receivable, the auditing Judge says: "The trustee gives credit for $970.30 which he says is all he collected out of the accounts that were turned over to him. But he admits receiving accounts which on their face amounted to $2,404.05. If the executor can get credit for the face of these accounts, then he overpaid. ...... It is impossible now to determine not

only what the accounts were, but whether the credit was improperly given, whether due efforts were made to collect, and the like. It is true that the claimant need admit no more than he thinks he ought. But he shows that he took possession of something which was tendered as a satisfaction of the award, and he shows on his own case that the question whether this was a performance or not depends upon a statement of a multitude of transactions, which it is now far too late to go into. *He does not admit payment in full, but he does admit facts from which it appears that his own neglect has made impossible the determination of the question as to whether he has or has not received payment in full."* (Italics supplied).

The auditing Judge allowed the claim of $500.63 with interest from August 29, 1928 to March 29, 1935, and distributed the same to the Trustee, and disallowed the balance of the claim.

No exceptions were filed to the findings of fact. The only exception was to the failure to allow for the full balance of $9,057.32 claimed. This exception came up for disposition before LAMORELLE, P. J., VAN DUSEN, STEARNE, SINKLER and KLEIN, JJ., and was dismissed in an opinion by STEARNE, J. Quoting from that opinion: "But in our opinion it was the duty of this trustee to have immediately, upon coming into possession of the business and its assets, taken appropriate steps to have all questions judicially settled if he disputed the accuracy of the accounting or the extent of the assets. It is too late to do this after waiting for over five years, and after the executor is dead, and when even he himself cannot produce the business records or explain their absence. The auditing judge properly refused to permit a review of the account of a decedent in the audit of the executor's own personal estate: Linnard's Est., 299 Pa. 32. After a lapse of five years the trustee is foreclosed from reviewing the former adjudication.

Stetson's Est., 305 Pa. 62. True it is that the trustee *avers* fraud, but the *proofs* reveal merely a disagreement as to verification of the assets and business accounts. All of this could have been adequately and accurately settled if appropriate steps had been promptly taken and prosecuted, especially in the lifetime of the executor, and while the books and records of the business were extant." We think this correctly disposed of the case and nothing can profitably be added to the opinion.

On February 8, 1935, the court refused the petition of the Trustee to present additional testimony to establish petitioner's right to be subrogated to the rights of creditors of Rev. James J. Kane, for the reason that it was an attempt by indirection to raise the same questions which had already been adjudicated by the auditing judge, whose findings of fact and conclusions of law had been confirmed by the court in banc. An appeal was taken from this order.

On February 15, 1935, another petition was presented by the Trustee for leave to present additional testimony in support, which petition was dismissed for like reasons as the first petition. An appeal was taken from this order.

In Atlas Portland Cement Co. v. American Brick & Clay Co. et al., 280 Pa. 449, 124 A. 650, the court, speaking through Mr. Justice KEPHART, said at p. 452: "The findings of fact and conclusions of law on which the decree is based are the necessary elements to sustain the decree. If the chancellor is mistaken in any of them, the overruling of exceptions thereto should be assigned as error. The assignment of the final decree does not permit consideration of all manner of alleged errors in findings, conclusions, admission of evidence, and the like. Should the final decree only be assigned, the correctness of findings of fact is admitted. With these admissions, the question that will then be pre-

sented is, Do the findings support the decree?" To the same effect are Schwartz v. Wesoky, 281 Pa. 388, 126 A. 779, and Huff's Estate, 299 Pa. 200, 149 A. 179.

More than five years have elapsed since the account of Rev. James J. Kane was confirmed, so any review of the account is barred at this time by the Act of June 7, 1917 P. L. 447, Sec. 48 (20 PS 843).

Under the undisputed facts, the accountant could not have possibly turned over the exact assets awarded, since they comprised a going business and were subject to change during the period between the filing of the account and the taking possession by the trustee. Whether or not the assets turned over satisfied the award depends on an account of the business during the intervening year. As to the accounts payable, this has been adverted to by the auditing judge from whose opinion we have quoted supra.

We see no error in the action of the lower court. The assignments of error are overruled and the respective decrees affirmed at the costs of appellant.