Virginia P. Martindell, complainant-appellant,

*v.*

Fiduciary Counsel, Inc., and Mildred Martindell, defendants-respondents.

[Argued October 26th, 1942.   Decided January 29th, 1943.]

*Messrs. McCarter, English & Egner (Mr. George W. C. McCarter,* of counsel), for the appellant.

*Mr. John W. McGeehan, Jr.,* for the respondent Mildred Martindell.

The opinion of the court was delivered by

HEHER, J.

A continuing offer grounded in a sufficient consideration constitutes an "option," as the term is known to the law. Since it is a promise upon a legal consideration, it is irrevocable for the time of its continuance, and takes the classification of a contract. It is not open to the objection of want of mutuality. Such is the nature of the promise here. Its exposition is governed by the general rules of interpretation. If the language is clear and explicit, there is no room for the application of any of the secondary rules of construction. If, on the other hand, the expression is ambiguous or uncertain, it is to be strictly construed in favor of the party bound and against the party not bound. *Pyrate Corp.* v. *Sorensen, 44 Fed. Rep. (2d) 323; Cloverdale* v. *Littlefield, 240 Mass. 129; 133 N. E. Rep. 565; Atwater & Co.* v. *Panama R. Co., 246 N. Y. 519; 159 N. E. Rep. 418; Williston on Contracts (Rev. Ed.)* § *620.*

The option under review is not lacking in clarity. It does not rule out acceptance of the offer by a mere promise to pay the consideration price of the stock. It does not in terms require acceptance by the payment or tender of payment of the purchase price. An unconditional promise to buy the stock in accordance with the provisions of the option would suffice to create a bilateral executory contract of sale having the requisite mutuality of obligation. *Atlantic Pebble Co.* v. *Lehigh Valley Railroad Co., 89 N. J. Law 336.* The optionor bound herself to "sell and transfer" the subject shares of stock to the optionee, for a fixed price, "at any time within five years from the date" of the agreement. The payment of the sale price was not made an express condition precedent

to the formation of a bilateral contract of sale. It was not made a prerequisite to the exercise of the right to purchase the stock on the terms prescribed. And such a design is not fairly to be implied. Though irrevocable, the option is but an offer to sell the shares to the optionee for•the stipulated price; and notice of its unqualified acceptance serves to create a bilateral executory contract of sale as in the case of the ordinary offer of sale and its unconditional acceptance. In the absence of a provision explicitly enjoining payment or tender of payment of the designated price as a *sine qua non* to the formation of an executory contract of sale, it is to be presumed that the parties contemplated a reasonable period of time for the preparation of the conveyance and an inquiry into the state of the title. Compare *Houghwout* v. *Boisaubin, 18 N. J. Eq. 315; Atlantic Pebble Co.* v. *Lehigh Valley Railroad Co., supra; Atlas Portland Cement Co.* v. *American Brick and Clay Manufacturing Co., 280 Pa. 449; 124 Atl. Rep. 650; McHenry* v. *Mitchell, 219 Pa. 297; 68 Atl. Rep. 729.* The cases elsewhere are in conflict—*e. g., Suhre* v. *Busch, 343 Mo. 170; 120 S. W. Rep. (2d) 47; Leadbetter* v. *Price, 103 Ore. 222; 202 Pac. Rep. 105; Kellough* v. *Lee, 2 Tex. Civ. App. 260; 21 S. W. Rep. 970; Pennsylvania Mining Co.* v. *Martin, 210 Pa. 53; 59 Atl. Rep. 436; Watson* v. *Coast, 35 W. Va. 463; 14 S. E. Rep. 249; Pollock* v. *Riddick, 161 Fed. Rep. 280.* See, also, cases annotated in *101 A. L. R. 1432.* And compare *Steele* v. *Bond, 32 Minn. 14; 18 N. W. Rep. 830; McKenzie* v. *Murphy, 31 Colo. 274; 72 Pac. Rep. 1075; Rease* v. *Kittle, 56 W. Va. 269; 49 S. E. Rep. 150; Crandall* v. *Willig, 166 Ill. 233; 46 N. E. Rep. 755.* But we regard the rule herein applied as designed to effectuate what reasonably appears to be the will of the parties, considered in the light of the circumstances; and this is the end to be served by construction. That would seem to be the normal significance of the expression.

As the learned Vice-Chancellor pointed out, the legal title to the stock remained in the vendor until the consummation of the sale. In such circumstances, payment of the price and the delivery of the stock certificate, duly assigned, are concurrent acts.

The further point is made that the optionee's letter of acceptance was qualified, since it did "not express a readiness and willingness to deliver $5,000 in legal tender to the complainant," but merely stated that that sum had been deposited to complainant's credit in the Denver bank, and contained what is termed a "counter-offer" for the designation of a time and place for the delivery of the shares and the payment of the purchase price, if complainant refused to "accept such procedure," which required acceptance to create an executory contract of sale. But it is a corollary of the foregoing considerations that all that was done respecting the payment of the sale price and the consummation of the sale, after the communication of the notice of acceptance of the option, concerned the performance rather than the formation of the bilateral contract of sale.

There is also the alternative contention that the letter of acceptance forwarded to the optionor was ineffectual, in that it was not "properly addressed." When the optionor appended her signature to the option, it had been executed by the optionee at Denver, Colorado, where she then lived. The former was a resident of Bernardsville, in this state; and she acknowledged that she "knew the transactions were taking place by mail." But the optionor's place of abode at the time of the acceptance of the option was not definitely known to the optionee. Indeed, the testimony of the optionor herself was that she was not then residing "at any particular place," but "was staying off and on" with a sister living at Gladwyn, Pennsylvania. She conceded that she "spent most of" her "time" with her sister there. The letter of acceptance was prepared in triplicate. One was despatched to the optionor by registered mail in care of her sister at the latter's residence in Gladwyn; another was addressed to the optionor at Bernardsville, and was likewise sent by registered mail; and the third was forwarded to her in care of her attorneys, McCarter, English and Egner, at Newark, New Jersey. The letter mailed to her sister's home at Gladwyn actually reached the optionor three days later; also the letter sent to her at Bernardsville. She was at her sister's home on the day of the mailing of these letters but left on that day for a brief

stay with a friend on Long Island. Her sister immediately advised her by telephone of the receipt of the letters, and she thereupon returned and received them.

In these circumstances, there was compliance with the optionee's duty of communication of her mental assent to the terms of the offer embodied in the option. In the absence of provision to the contrary, it suffices if the transmission of the acceptance be done by mail. It is then to be presumed that such is the medium of communication contemplated by the parties themselves. In that situation, the *aggregatio mentium* occurs when the letter of acceptance is deposited in the post office. *Hallock* v. *Commercial Insurance Co., 26 N. J. Law 268; affirmed, 27 N. J. Law 645.*

A dividend declared on corporate capital stock during the pendency of a mere option to purchase the shares inures to the transferor, even though payable *in futuro*. But if there be no provision otherwise, a dividend declared on shares constituting the subject of a binding executory contract of sale, after the making of the contract and before the consummation of the sale, is the property of the transferee. Equity regards and treats as done what in good conscience ought to be done. Under this cardinal equitable principle, there being no contrary intent, executory contracts for the sale of lands or chattels, while considered as executory for some purposes in equity as well as at law, are from the outset regarded in equity as executed so far as concerns the interest or estate in the subject-matter and as operating to transfer that interest to the vendee. An equitable estate or interest commensurate with the requirements of the contract of sale is vested in the vendee. Although the vendor still has the legal title, he holds it in trust for the vendee. The beneficial interest is in the vendee. This is so as to the parties to the contract and, as well, all who take with notice of the vendee's equitable rights. Compare *King* v. *Ruckman, 21 N. J. Eq. 599; Haughwout* v. *Murphy, 22 N. J. Eq. 531; Schmidt* v. *Opie, 33 N. J. Eq. 138; Marion* v. *Wolcott, 68 N. J. Eq. 20.* While these cases concern contracts for the sale of land, this great equitable principle is likewise applicable to agreements for the sale of personal property and things in action, even

assignments of future and contingent interests and possibilities therein when made upon a valuable consideration. *Pom. Eq. Jur. (5th ed.)* §§ *368, 369, 1270, et seq., 1280, et seq., 1285, el seq.*

The principle is operative where essential to serve the ends of distributive justice. It is not invocable if thereby inequity would be perpetrated. It is intimately related to the maxim that equity regards the substance and intent rather than the form; and it has been termed the foundation of all distinctively equitable property rights, estates and interests. *30 C. J. S. 507, et seq.* The doctrine of the specific performance of contracts for the sale of lands derives in the main from this principle. *Haughwout v. Murphy, supra.* And the fundamental principles which govern a court of equity in decreeing the specific performance of contracts are in essence the same whether the contract concerns realty or personalty.

There is no inherent difference between real and personal property which controls the exercise of this equitable jurisdiction. In the case of personalty, full compensatory damages for the breach of the contract are normally ascertainable and recoverable at law; and, since that remedy is ample, there is no occasion for equitable relief. But where the legal remedy is inadequate, specific performance of a contract for the sale of personal property will be decreed with the same freedom as in the case of a contract for the sale of land. *Curtice Brothers Co. v. Catts, 72 N. J. Eq. 831; Law v. Smith, 68 N. J. Eq. 81.*

Shares of capital stock are "personal property." *R. S. 1937, 14:8-12.* And dividends thereon constitute a portion of the accumulated surplus or profits of the enterprise allotted to the stockholders according to their several interests, as their distributive property. *R. S. 14:8-19* and *14:8-20.* Upon declaration, the dividend becomes instanter the property of the shareholder, although payable in the future. It is separate and distinct from the stock, and does not pass as an incident of the shares if sold before the payment of the dividend. But prior to the declaration of the dividend, the stockholder's right to share in the corporate surplus or profits is an incident of his stock ownership and is included in a sale

of the shares. *Ford* v. *Snook, 199 N. Y. Supp. 630; affirmed, 240 N. Y. 624; 148 N. E. Rep. 732.* By the same token, this right to participate in a distribution of surplus or earnings among the shareholders is an incident of the beneficial ownership of shares made the subject of an executory contract of sale, and a dividend intervening the making of the contract and the consummation of the sale passes to the holder of the equitable title to the stock and is an interest cognizable and enforceable in equity. Such is the equitable conception of right and duty barring provision otherwise. The equitable obligation is designed to fulfill the common intention of the parties. In these circumstances, it is deemed that the parties contemplated the transfer of the shareholder's interest in the corporate property as it subsisted when the contract of sale was made. This is the element of value that measures the sale price. That interest undiminished by the subsequently declared dividend was the thing bargained for. To borrow the metaphor of the opinion in *La Fountain & Woolson Co.* v. *Brown, 91 Vt. 340; 101 Atl. Rep. 36; L. R. A. 1917F 551,* equity permits the vendor to retain the "fallen fruit," but it does not grant to him the additional privilege of "shaking the tree" after the bargain is closed.

Shares of stock represent the holder's interest in the corporate assets, and their transfer serves to convey that interest. The surplus of a corporation is an integral part of the stock itself until separated from the capital by the declaration of a dividend. *In re Heaton's Estate, 89 Vt. 550; 96 Atl. Rep. 21; L. R. A. 1916D 201.* "Such undivided surplus will pass with the stock under that name in a transfer thereof. The purchaser takes the stock with all its incidents, one of which is the right to receive its proportionate share of undivided profits." *La Fountain & Woolson Co.* v. *Brown, supra.* Under an executory contract of sale, there being no different intent, the vendor's beneficial interest passes to the vendee immediately the contract of sale is made. The Uniform Stock Transfer Law (*R. S. 1937, 14:8-23, et seq.*) has no applicancy to transfers of an equitable title; it governs the conveyance of the legal title only. *Stuart* v. *Sargent, 283 Mass. 536; 186 N. E. Rep. 649.*

Thus, if there be no stipulation to the contrary, the vendee under an executory contract of sale of corporate stock is entitled in equity, on the performance of his contract, to a dividend declared on the shares subsequent to the making of the contract.

As stated, equitable ownership is not effective for all purposes. For example, it is the general rule that, unless there be a statutory provision or a stipulation contrariwise, an executory contract for the sale of capital stock does not deprive the holder of the legal title of his right to vote thereon at stockholders' meetings. *In re Argus Co., 138 N. Y. 557; 34 N. E. Rep. 388; 18 C. J. S. 1239. Vide R. S. 1937, 14:10-1, et seq.*

There is no superior equity in favor of the optionor here which serves to vary the application of the general rule. Indeed, there is no such contention.

Let the decree be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 12.

*For reversal*—DONGES, J. 1.