**PLACID INVESTMENTS, LTD.,**
Plaintiff-Appellant,

v.

**GIRARD TRUST BANK,**
Defendant-Appellee.

No. 85–1449.

United States Court of Appeals,
Fifth Circuit.

May 19, 1986.

Rehearing Denied July 1, 1986.

Roger Goldburg, Shank, Irwin & Conant, Hilary A. Molay, Norlynn Blocker, Brett A. Ringle, John J. Marek, Dallas, Tex., for plaintiff-appellant.

Raymond W. Midgett, Jr., Sharon Klein Buck, Dechert, Price & Rhoads, Philadelphia, Pa., Strasburger & Price, Ernest R. Higginbotham, John H. McDowell, Dallas, Tex., for defendant-appellee.

Before GEE, RUBIN, and GARZA, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A bank purchased United States silver coins for their face value of $710,000 at a time when their market value as silver bullion exceeded $7,000,000. The bank simultaneously granted the seller a one year option to repurchase the coins at face value. The coin seller then sold the option to repurchase the coins for approximately $7,000,000, to a partnership that intended to exercise it to acquire the coins. As the trial court found, however, the partnership failed to exercise the option until the busi-

ness day following its expiration, and the bank refused to honor the belated tender. Our review of the record persuades us that the trial court was not clearly erroneous in finding that the option expired unexercised. We, therefore, affirm the judgment in favor of the bank.

## I.

The type of transaction at issue was common in the commodities market several years ago. Typically, a bank purchased from a commodities dealer United States coins, which had been made years before of an alloy that was 90% pure silver. The bank paid only the face value of the coins and, because they were United States currency, it was permitted by the Federal Reserve to count their face value in its vault cash reserve. The bank then granted an option entitling the seller to repurchase the coins within a fixed period of time at face value plus a one percent option fee. The bank was thus able to earn a one percent return on part of its otherwise unproductive vault cash. At the same time, the seller was able to avoid the cost of storing and insuring the coins and gained the use of funds equal to their face value for the term of the option at a nominal cost. The option was negotiable so that the original seller could sell it to other investors and realize a profit from any increase in the price of silver bullion without exercising the option or physically moving the coins. Eventually, the options would be exercised, and both parties benefitted nicely from the interim advantages of their agreement.

The specific agreement in dispute involved 710 bags of coins with a face value of $1,000 per bag and a market value that varied between $7,000,000 and $12,000,000 during 1978–1980. The coins were sold at face value by Metals Quality Corporation to Girard Trust, a Philadelphia bank, on July 11, 1978. Metals Quality received a one year option, subsequently extended for a second year to July 11, 1980. After several mesne assignments, the option agreement was ultimately purchased for approximately $7,000,000 by Placid Invest-

ments, Ltd., a partnership in which Nelson Bunker Hunt, William Herbert Hunt, and Lamar Hunt were limited partners, and Placid Investment Company, a subsidiary of the Hunt-controlled Placid Oil Company, was the general partner. At this time, the three Hunt brothers owned, either directly or through controlled entities, silver investments in various forms with a market value of roughly one billion dollars.

In the weeks before the option expired, various telephone conversations and correspondence took place between Placid and Girard. These involved Samuel J. Dealey, Placid's attorney; Ben H. Cambron, Placid's controller; John B. York, associate general counsel for Girard; and John J. Pernin, Girard's senior banking officer in charge of precious metals. At trial, there was sharp dispute about exactly what was said in these conversations and their significance. All parties conceded, however, that the option expired on Friday, July 11, 1980, at which time Placid had not sent to Girard either written notification of its intent to exercise the option or the $710,000 option price.

On Saturday Cambron realized his omission, so, on the following Monday, he wired the funds and sent Girard written notification of exercise with the original option agreement enclosed. Cambron also telephoned Pernin to say that he had made a mistake, and that Placid might owe the bank two days extra interest. Pernin replied only that he would have to consult Girard's house counsel. Placid's funds were returned the day after they reached Girard, and subsequent tenders were rejected. Approximately one week later, Girard's Chairman of the Board made the final decision that the bank would keep the coins.

## II.

Placid argued at trial that the coin agreement was not truly an option but was either a collateralized loan agreement, bailment, or storage contract and, consequently, that a brief delay in its exercise was not a material breach. Nevertheless, the trial

court found that the agreement was an option, and Placid does not contest this finding on appeal.

Instead, it argues that the option agreement did not specify any particular manner of exercise and, therefore, that oral notification sufficed. Both Dealey and Cambron testified that they orally exercised the option in telephone conversations with Pernin. At trial, Dealey testified that he told Pernin on June 30 that, as the options expired, Placid would take delivery of all the coins subject to option under each of the five option contracts, including the July 11 option, between Placid and Girard. Dealey told Pernin that Cambron would handle the details of settlement. Cambron testified that he also spoke to Pernin on July 2 or 3 and advised him in unequivocal terms that Placid intended to exercise the July 11 option.

Pernin testified differently. He characterized Dealey's and Cambron's words as an uncertain expression of future intent, to the effect of "I guess we will exercise the options, but we are not yet sure." Pernin said that the telephone conversations with Cambron and Dealey left him in doubt as to Placid's intentions, and, therefore, he wrote Cambron on July 3, stating:

> I understand that it is your current intention to exercise the existing coin options with Girard Bank on their maturity dates. . . .
> Please advise the above in writing to me.
> Prior to exercising the above agreements, it will be necessary for Placid to have the originals of the option agreements delivered to Girard Bank along with good funds in the face amount of silver coins being purchased.

> .    .    .    .    .

> Please advise me as soon as possible of your intentions to exercise and ship the coin bags mentioned above.

Cambron received the letter on July 8, but did not reply.

Placid argues that Pernin could not have been in doubt about its decision to exercise the option: option agreements such as these were always exercised; in billing Placid, Pernin had prorated the one percent option fee in expectation that all of the options would be exercised; he told Cambron that Placid could collect the coins from an earlier-exercised option when they collected the 710 bags from the July 11 option; and, at one point, Pernin testified that he never had any understanding that Placid intended simply to allow the bank to keep the coins.

The trial court credited Pernin's testimony and found that Placid had not carried its burden of proving that the option had been orally exercised. Applying Pennsylvania law, which the parties agree is appropriate under Texas choice-of-law rules, the court found that neither Dealey nor Cambron had expressed the "certain, definite and unequivocal intention to exercise [Placid's] rights presently," that was necessary to orally exercise the option.[1]

Placid's counterargument is, in essence, that the option must have been exercised because Pernin expected it to be exercised, and because the magnitude of the loss makes it inconceivable that anyone would have failed to exercise it. Such reasoning, coupled with a court's power of hindsight, could remedy the most egregious errors of any commercial transaction. The invocation of fairness tempts us to recast the transaction, avoiding the mammoth loss to Placid and the unearned bonus to Girard. But the transaction was cast by sophisticated parties. As judges we do not administer palmtree justice but follow those settled rules that parties who engage in commercial transactions rely upon. We cannot reform their contract or ignore mistakes simply because they are costly.

■ The record contains ample evidence to support either Placid's or Girard's ver-

1. *See Detwiler v. Capone*, 357 Pa. 495, 501, 55 A.2d 380, 384 (1947); *Taylor v. Hartman*, 370 Pa. 146, 148, 87 A.2d 785, 786 (1952); *see also* *Pennsylvania Mining Co. v. Martin*, 210 Pa. 53, 55, 59 A. 436, 437 (1904).

sion of the facts. Rule 52(a) of the Federal Rules of Civil Procedure requires us to accept the witness credibility assessments of the district court, whether those witnesses testified in person or by deposition.[2] We, therefore, affirm the trial court's finding that the option expired unexercised.

■ The trial court also found, and Placid also disputes on appeal, that the correspondence and course of dealing between the parties had modified their agreement to require written notice, payment of funds, and return of the original option agreement in order to exercise the option that was, on its face, otherwise silent as to the method of exercise. This determination, too, is subject to reversal only if it is clearly erroneous.[3] Affirming the district court's conclusion that the option was not exercised orally, we need not reach the question of whether it was modified to require more. Nevertheless, we have reviewed the record, and find the district court's conclusion to be well supported: Both Girard and Placid followed this practice in exercising all of their other coin option agreements; Placid attempted to meet these requirements as soon as it realized that the option had expired; Girard had notified Placid of these and other requirements several times, orally and in writing, and Placid acquiesced without objection to all of them.[4]

Finally, Placid argues that the trial court erroneously denied relief for its claim that Girard had converted Placid's coins, a claim that would have afforded Placid a more generous damage award than that permitted for a breach of contract. Because Placid did not exercise its option, however, it had no legal right to the coins, and Girard converted nothing.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

2. *See, e.g., Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *Olgin v. Darnell,* 664 F.2d 107, 108 (5th Cir.1981).

3. *See, e.g., Carpenter's Health Benefit Fund v. Holleman Construction Co.,* 751 F.2d 763, 766 (5th Cir.1985); *In re Stratford of Texas, Inc.,* 635 F.2d 365, 368 (5th Cir.1981).

4. *Cf.* U.C.C. § 2–208 (1978).